J. J. NEWMAN LUMBER CO. *v.*-ROBERTSON, STATE REVENUE AGENT.

[95 South. 244. In Banc. No. 22512.]

1. PUBLIC LANDS. *Sale of timber on school section held not uncon-stitutional.*

   Where a board of supervisors sell the timber on a school section of land in accordance with section 4702, Code of 1906, section 7512, Hemingway's Code, and grant the purchaser fifteen years within which to cut and remove the timber. as a reasonable time for doing so, this sale is not invalid under section 211 of the Constitution of 1890.

2. PUBLIC LANDS. *Reasonable time for purchaser to remove timber from school lands is not in excess of twenty-five years.*

   Under this section of the Constitution, since the maximum time therein provided within which the board of supervisors can lease a sixteenth section is twenty-five years, within this limit of twenty-five years they have a right to decide that a reasonable time for a purchaser to remove the timber is any time not in excess of the twenty-five years.

3. PUBLIC LANDS. *Board of supervisors have a right to convey to purchaser of school lands right to cut remaining timber in one year after expiration of time within which to remove it.*

A few months before the expiration of the time granted a purchaser within which to cut and remove the timber from a sixteenth section, the board of supervisors had a right to sell and convey to this purchaser the right to cut and remove the timber remaining uncut by him at the expiration of the time limit of his first deed, all timber remaining uncut by him at that time, and to grant him one year within which to cut and remove and exercise all other privileges granted him in his original deed, when this is done in good faith and for a valuable consideration.

Ethridge, J., dissenting.

APPEAL from circuit court of Jefferson Davis county.

HON. G. WOOD MAGEE, Special Judge.

Suit by Stokes V. Robertson, State Revenue Agent, against the J. J. Newman Lumber Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*S. E. Travis* and *Luther Hennington, Brady, Dean & Hobbs,* for appellant.

*F. C. Hathorn* and *E. B. Williams,* for appellee.

SYKES, J., delivered the opinion of the court.

The state revenue agent instituted this suit to recover from the appellant (defendant) for the value of timber cut by appellant from a sixteenth or school section of land in Jefferson Davis county. Under a peremptory instruction in favor of the plaintiff the jury returned a verdict for the value of all timber cut from this section by the defendant. Upon which verdict a judgment for something over eighty thousand dollars was rendered in the circuit court, and from which judgment this appeal is prosecuted.

The material averments of the declaration necessary to be here stated are as follows: This section of land has never been leased for agricultural purposes. Before the sale of the timber hereinafter stated, it was covered with

a dense forest principally of pine trees; that on January 5, 1903, the board of supervisors undertook to sell to G. L. Hawkins, for a cash consideration of four thousand three hundred dollars, the merchantable pine timber and wood on this section, and granted in this deed to Hawkins a term of 15 years within which to cut and remove the timber from the section (which deed also granted him any rights of ingress and egress and certain other privileges necessary for the purpose of cutting and removing the timber from the land). The authority under which the board made this sale was chapter 41, Laws of 1898; section 4702, Code of 1906; section 7512, Hemingway's Code. Through mesne conveyances from Hawkins this appellant claims title. The declaration is in two counts. In the first count it is alleged that since this sale of timber was made for a gross amount, the maximum period of time the board of supervisors could have allowed for its cutting and removing was a period of ten years under section 211 of the Constitution; that the timber sold under this contract was not cut within this ten years; and that the title thereto before its cutting had revested in the state. It is further alleged that a few months before the expiration of the fifteen years to cut and remove granted in the Hawkins deed, for a consideration of two hundred dollars the board granted an extension of time of one year to the appellant to cut and remove this timber; which grant was void. The second count alleged that the appellant cut and removed timber not covered by his contract and sought a recovery of its value.

It is unnecessary to refer in detail to the pleas filed in the court below by the defendant. Neither is it necessary on this appeal to consider the admissibility of the testimony under which the plaintiff sought to show the number of trees cut. Neither is it necessary to set out in full the deed of the president of the board of supervisors to Hawkins. Suffice it to say about this deed that it was properly drawn, stated a valuable consideration, and granted a term of fifteen years for cutting and removing

the timber. It becomes important, however, to set out in full the order of the board of supervisors relating to the second instrument, whether it be an extension or a conveyance, and also the instrument executed in pursuance of this order by the president of the board. This order is as follows:

"Whereas, Nicholas Manufacturing Company, a corporation under the laws of the state of New Jersey, is now the owner of all the merchantable pine timber and pine wood on that land in Jefferson Davis county, Mississippi, to-wit, all of section sixteen, in township six, north range eighteen west, together with certain rights of way on said land with the right to enter and cut and remove said pine timber at any time prior to January 5, 1918; and, whereas, said Nicholas Manufacturing Company fears that it may not be able to cut and remove said pine timber within said period and has offered to pay the sum of two hundred dollars for an extension of one year of its right to cut and remove its said timber and pine wood from said land and for its other rights with reference to said timber and wood and land; and, whereas, the board of supervisors of Jefferson Davis county feels that one year's additional time asked for is reasonable and that said sum of two hundred dollars so offered by said Nichols Manufacturing Company is a fair and reasonable consideration for such extension so asked by said Nicholas Manufacturing Company: Now, therefore, it is hereby resolved by this board that the president of this board of supervisors be and he is hereby authorized and directed to execute an extension of one year to said Nicholas Manufacturing Company for the cutting and removing of said timber and pine wood and of the other rights now owned by the said Nicholas Manufacturing Company with reference thereto, same to be executed in the name of the board of supervisors of Jefferson Davis county, by T. W. Carraway, president thereof, for the consideration of two hundred dollars cash.

"Ordered and adjudged this August 28, 1917."

Upon this order the president of the board executed this instrument:

"State of Mississippi, Jefferson Davis County.

"In consideration of the sum of two hundred dollars in cash, the receipt whereof is hereby acknowledged, and in pursuance of an order of the board of supervisors of said county of this date so authorizing and directing, I, the undersigned, T. W. Carraway, president of the board of supervisors of Jefferson Davis county, Mississippi, do hereby, for and on behalf of said board and in the name thereof, sell and convey unto Nicholas Manufacturing Company, a corporation under the laws of the state of New Jersey, it being the present owner of all the merchantable pine timber and pine wood on all of section 16, township 6, north of range 18 west, Jefferson Davis county, Mississippi, with the right to cut and remove same at any time prior to January 5, 1918, an extension of one year's time in which to cut and remove said timber and pine wood from said land, and to exercise its other rights with reference thereto, so that all its rights now owned with reference to said timber and wood shall expire on January 5, 1919.

"In testimony whereof, I have caused this instrument to be executed in the name of said board by me as president for and on behalf of the board of supervisors of said county, and as its act and deed. This August 28, 1917. Board of Supervisors, Jefferson Davis County, Mississippi, by T. W. Carraway, President."

It is the contention of the appellee that the court was correct in granting him a peremptory instruction for the reason that the longest length of time for which a school section may be leased for a lump sum is ten years as provided in section 211 of the Constitution; that a sale of the timber burdens the land with the growth and support of the timber and to that extent is in reality a lease of that part of the section burdened with this growth and support, and under this section of the Constitution where the sale

is for a gross sum the board is limited to this ten-year period.

It is the contention of the appellant that section 211 only deals with the leasing of the land and has nothing to do with the sale of the timber or the time granted by the board for the removal of it; consequently, that the board of supervisors in good faith have a right to grant a vendee of timber upon a school section whatever time in their judgment is a reasonable time for the cutting and removing of the timber.

Both parties rely for their respective contentions upon the opinion of the court in the case of *Dantzler Lumber Co.* v. *State,* 97 Miss. 355, 53 So. 1.

Both parties are wrong in these two contentions. They are only right in stating that the opinion of the court in the Dantzler Case is determinative of this controversy. The Dantzler Lumber Co. case expressly held that the prohibition against selling school lands did not apply to the sale of the timber growing on these lands; that the word "land" in this section of the Constitution is used in its restricted sense, and refers to the soil, and not to the timber growing thereon; and that section 41, Laws of 1898, section 4702, Code of 1906, section 7512, Hemingway's Code, providing for the sale of the timber growing on these lands, is constitutional. This section provides that the merchantable timber and wood may be sold. It then provides what is to be done with the proceeds of the sale. This case further decides that the board of supervisors have the right to permit the purchaser to enter upon the land and remove the timber and necessarily to burden the land with the support thereof until removed; "but they have no right or power to grant him an indefinite length of time for this purpose, for the reason that section 211 of the Constitution prohibits the state from parting with the possession and control of sixteenth section lands, except for a definite and comparatively short period of time. Such purchaser, therefore, can only be granted a reasonable time in which to remove the timber, during which,

of course, he has the right to burden the land with the support thereof, and to that extent has a right to or interest in the land." A careful consideration of this case, especially that portion above quoted, makes it perfectly plain that the support of the timber is an interest in the land, and that in conveying this interest in the land the provisions of section 211 become operative. The sale of the timber is a separate and distinct thing from the leasing of the lands. Section 211 of the Constitution has nothing whatever to do with the terms of the sale of the timber; that is to say, whether the sale be for a gross sum or be for annual payments, because this section does not in any way deal with the sale of the timber. Consequently, the fact that the timber was sold for a gross sum relates in no way to the constitutional inhibition of the leasing or burdening of these lands. The burdening of the land for the growth of the timber is in no sense contemplated in any one of the particular modes specified for the leasing of these lands. Under this section of the Constitution, the longest period of time for which the legislature may provide for the leasing of the land is a period of twenty-five years. Section 1, chapter 40, Laws of 1898, section 4700, Code of 1906, section 7510, Hemingway's Code, provides that lands not in a municipality may be leased for a term not exceeding fifteen years, on the condition of the payment annually of the rent reserved. In the *Dantzler Lumber Co. case, supra,* and in the *Dunnam case* (Miss.), 67 So. 461, and *Blodgett case,* 110 Miss. 768, 70 So. 710, the purchaser of the timber was also the lessee of the land. In none of these cases was the purchaser given a longer period of time to remove the timber than the duration of his lease. The effect of these decisions is that the time of the lease was a reasonable time within which to remove the timber. This lease was already burdened with the support of this timber. The lessee leased the land subject to this burden. The question of burdening an unleased school section was not therein before the court. The leasing of these sections in any of the various ways enumerated in the Constitution is a

thing separate and apart from the sale of the timber. Whether the timber be sold for a cash consideration or for deferred annual payments can in no wise affect the right of the board of supervisors to burden the land with the timber. The period of time referred to in the *Dantzler Lumber Co. case, supra,* can only be the maximum period of twenty-five years as provided in the Constitution. Within this limit, in the exercise of good faith the board is the sole judge of what is a reasonable time. This inhibition merely provides for a time beyond which the board cannot burden an unleased sixteenth section.

In chapter 40, Laws of 1898, which is now section 7510, Hemingway's Code, it is provided that these lands not within a municipality shall not be leased for a period exceeding fifteen years. In chapter 41, Laws of 1898, now section 7512, Hemingway's Code, it is provided that the board of supervisors may sell the timber on these lands, and no limit of time is placed upon them within which they may allow the purchaser to cut and remove. The burdening of the land with the timber is not similar to any kind of lease the board may make of the land. For this reason we are of the opinion that the fifteen-year period mentioned in section 7510 of Hemingway's Code is not the maximum limit within which the land may be burdened because of the sale of the timber, but that the only limit which is applicable is the maximum limit of twenty-five years mentioned in the Constitution.

From the testimony it is not clear how much of the timber was cut before the expiration of the fifteen-year period. It seems clear, however, from it, that a great deal of it, considerably over one-half, was cut before this time expired. All of the timber was cut before the expiration of the one year granted under the second instrument. For the reasons above set forth, we are of the opinion that there was a valid sale of the timber, and that the board of supervisors had the right to decide that fifteen years was a reasonable time to grant for its removal.

With reference to the order of the board of supervisors and the grant from the president relating to the additional year, looking through the form to the substance we are satisfied that it was the purpose and intention of both the grantor and grantee to convey the grantee all of the timber which he failed to cut during the life of his first contract and granting him all rights and privileges held by him under the first deed, with a period of one year within which to cut and remove the timber. This grant was made in good faith for a valuable and adequate consideration, and is valid and binding under section 7512, Hemingway's Code.

Under these views, it follows that the demurrer of the appellant to the first count of the declaration should have been sustained. The demurrer to this count is hereby sustained. The cause is reversed and remanded upon the second count, which seeks recovery for timber cut not covered by these two conveyances held by the appellant.

*Reversed and remanded.*

ETHRIDGE, J. I am compelled to dissent from the conclusion of the majority opinion that the board of supervisors of the county acting under section 4702, Code of 1906, chapter 41, Laws of 1898, in selling the timber upon sixteenth section lands, can grant a longer period to the buyer of such timber with the right to burden the land for its support and growth than ten years. The pertinent part of section 211 of the Constitution of Mississippi of 1890 dealing with this subject is as follows:

"The sixteenth section lands reserved for the support of township schools shall not be sold, nor shall they be leased for a longer term than ten years for a gross sum; but the legislature may provide for the lease of any of said lands for a term not exceeding twenty-five years for a ground rental, payable annually; and, in case of uncleared lands, may lease them for such short term as may be deemed proper in consideration of the improvement thereof, with right thereafter to lease for a term or to hold on payment of ground rent."

In the case of *Dantzler Lumber Co.* v. *State,* 97 Miss. 355, at page 383, 53 So. 1, at page 3, in dealing with this question involving in that case the right to sell the timber growing upon the land, the court said:

"Since the boards of supervisors have the right to sell this timber, it follows that they have the right to permit the purchaser to enter upon the land and remove same, and necessarily to burden the land with the support thereof until removed; but they have no right or power to grant him an indefinite length of time for this purpose, *for the reason that section 211 of the Constitution prohibits the state from parting with the possession and control of sixteenth section lands except for a definite and comparatively short period of time. Such purchaser, therefore, can only be granted a reasonable time in which to remove the timber, during which, of course, he has the right to burden the land with the support thereof, and to that extent has a right to or interest in the land."* (Emphasis mine.)

By the express provisions of the Constitution above quoted it is provided "nor shall they be leased for a longer term than ten years for a gross sum." In the present case the sum is gross and not payable in annual installments. This gross sum pays for the timber and for the use of the land while it is standing upon the land and comes clearly within this provision of the Constitution. The maximum length of time which it is possible for the legislature to authorize the use of the land to the buyer of the timber is fixed at ten years. Of course, the legislature may restrict this term by law to such less period as in its wisdom may be right and proper, but it cannot authorize a longer period of time without exacting an annual payment for the use of the land beyond the ten-year period. The Constitution by express provision authorizes the legislature to provide for a lease of said land for a term not exceeding twenty-five years "for a ground rental payable annually," and in case of uncleared lands may lease them for such short term as may be deemed proper in consideration of the improvement thereof. By the plain words of the Constitution,

if the time of use exceeds ten years, there must be a ground rental payable annually or there must be improvements put upon the land for a short term as a consideration for the use of the land. In the case before us there was neither the payment of the ground rental annually, nor was there any provision for improving the land. In fact, it was not improved in any manner. Therefore necessarily the ten-year limitation should prevail. Prohibitions in the Constitution are mandatory and strike down any attempted legislation in conflict with them. The provisions of the Constitution are generally mandatory and certainly prohibitions are both mandatory and self-executing.

In 6 R. C. L., p. 55, section 50, it is stated: "In the interpretation of Constitutions questions frequently arise as to whether particular sections are mandatory or directory. The courts usually hesitate to declare that a constitutional provision is directory merely in view of the tendency of the legislature to disregard provisions which are not said to be mandatory. Accordingly it is the general rule to regard constitutional provisions as mandatory, and not to leave it to the will of a legislature to obey or disregard them. This presumption as to mandatory quality is usually followed unless it is unmistakably manifest that the provisions were intended to be directory merely."

In 6 R. C. L., p. 62, section 58, under heading "Prohibitions," it is stated: "Prohibitory provisions in a constitution are usually self-executing to the extent that anything done in violation of them is void. Prohibitions against municipal corporations making donations to private corporations and similar limitations upon the indebtedness of municipalities have been held to be self-executing. In similar manner it has been held that a constitutional provision was self-executing which prohibited a county board from paying money to schools controlled by a church. The same interpretation has been given to prohibitions against foreign corporations doing business within a state without having an authorized agent; to those denying the right of the legislature to authorize corporations to form

combinations so as to lessen competition; to provisions directing that no county officer shall receive to his own use any fees or emoluments other than the annual salary provided by law; and to provisions prohibiting marriages between white and colored persons. It has even been held that a self-executing mandate is contained in a constitutional provision that knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways, or appliances, shall be no defense to an action for injury caused thereby."

In 12 Corpus Juris, p. 731, section 109, under heading "Prohibitions and Restrictions," it is said:

"In determining when a constitutional provision is self-executing, there is a distinction between a declarative limitation of legislative power on a given subject, within which legislation may or should be enacted, and positive constitutional inhibition which no legislative act can relieve or modify. It is a settled rule of constitutional construction that prohibitive and restrictive provisions are self-executing and may be enforced by the courts independently of any legislative action."

In Black's Constitutional Law (3d Ed.), p. 78, the fifth rule for construction of the Constitution is laid down as follows:

"The provisions of the Constitution are almost invariably mandatory and it is only in extreme cases or under the pressure of necessity that they can be construed as merely directory."

In *Brien* v. *Williamson*, 7 How. (Miss.), 14, it is said that the Constitution should be construed so as to effectuate, not defeat, the policy indicated by its framers.

It is manifest from reading section 211 of the Constitution that the policy and purpose of the legislature was to prohibit the leasing or letting of sixteenth section lands for a longer period than ten years for a gross sum. The framers of the Constitution had in mind the previous dispositions of sixteenth section lands in this state whereby such lands had been leased for ninety-nine years for a

long period for a mere nominal cash consideration, resulting in depriving the inhabitants of the township of any benefit whatever for the use of such lands for school purposes. The small sum so received had frequently been wasted, and neither the lands nor the funds were available for the purpose for which they were donated to the state. The legislature well knew the tendency of the people to get a benefit for themselves payable *in praesenti*, ignoring the interests and rights of the generations to come on afterwards. They established clearly the policy of having the lands leased for short terms so that they would be available for their proper use on the basis of actual value. The enumeration of the conditions under which the legislature could exceed the ten-year limit in a lease is specific, and the naming of the conditions on which they could be leased necessarily excluded other conditions than those named.

In *State* v. *Henry,* 87 Miss. 125, 40 So. 152, 5 L. R. A. (N. S.) 340, it was held that, when the Constitution enumerated the powers granted or denied, it must be held to have named all of the powers so dealt with and as being with the necessary limitations the sole limit of the authority or restriction.

The right to have the trees remain on the soil to be supported and increase their growth is nothing more nor less than a limited lease. It is a lease of restricted rights, but under the contract involved here the buyer of the timber had the power to go upon the land, construct right of ways, cut and remove timber, and do all things needful in so doing. This power could be exercised at any moment within the period allowed by the purchaser, and no right could thereafter be created by contract that would not have to yield absolutely to this right of the buyer. It is shown in the proof in this case, and we know it without proof, that the trees standing upon the land which were sold would retard the growth of nonmerchantable timber; that is to say, the young trees would be retarded in their growth by being overshadowed by the larger trees which take up the strength of the soil. We know that if the timber is re-

moved the young trees will grow much more rapidly and will become much more quickly available as merchantable timber by having the trees removed. Trees constitute a perennial crop, and in the case of the sixteenth section in question is the chief value of the land, though not its sole value.

In Words and Phrases, First Series, vol. 5, p. 4047, it is said:

"A mere license to occupy, use, or take the profits of land is in the nature of a lease. An executory contract for the purchase of land, giving to the purchaser a right to enter and possess until default in the payment of the purchase money, without any fixed period, and without any compensation being made for the use, is only a license."

But it is said: "A written agreement by the owner of coal land, giving another the exclusive right to mine coal thereon for a term of years, is not a mere license, but a lease, which is assignable."

Also: "An instrument which conveys the exclusive right to enter upon lands, and to dig and mine phosphate, rocks, and other minerals, and to carry them away and sell for his own use, for a term of years, on certain royalty, is a lease and not a license to mine.

Also: "A contract in writing for the use and possession of a tract of land, and the right to cut and remove a part of the timber growing thereon, is a lease, and not a license."

Also: "Where the owner of land, for a valuable consideration, grants the land described to the other party to the contract for the purpose and with the exclusive right of drilling and operating for oil and gas for a certain number of years, the instrument is more than a mere license. It is a lease of the land for the purpose and period limited therein."

Other definitions and cases applicable are cited therein.

The majority opinion recognizes that section 211 of the Constitution is applicable as a limitation upon the right of the legislature to burden the land with the growth and support of the timber, but seek by a construction to place

it within the latter provision of the Constitution authorizing a lease for as long as twenty-five years. But inasmuch as the legislature has only authorized a lease for fifteen years, making that time applicable in the present case, this seems to me to be plainly in the face of the unmistakable language of the Constitution. The consideration recited in the deed is a gross sum. No annual payment whatever in any shape or any form is provided, nor does the contract give any separate consideration for the use of the land during the period. It is so manifestly granting the time as a lease for a gross consideration, or else it is a voluntary donation of the land without consideration, which the board clearly had no power to grant. The sum is gross. There is no annual payment and no ground rental. The legislature had no power to extend the time beyond ten years except for a ground rental payable annually.

The cases relied on by the appellants being companion cases of the *Dantzler Lumber Co. case,* 97 Miss, 355, 53 So. 1, and some subsequent thereto, have no bearing upon the question here, as is recognized in the majority opinion, because in all of those cases the purchaser had already acquired a leasehold estate for a longer period in which he was allowed in the contracts to remove the timber, and as a part of the consideration in the contract in each of the cases there was a surrender of a certain number of years, varying somewhat in the different cases, which was yielded back to the county at the end of the period. Also those cases were argued upon the theory that the act of the legislature was unconstitutional and did not involve the question here presented for decision. The section here involved had never been leased at all. A purchaser of the timber got only such rights as his contract made with the board could lawfully give him and, as I see it, that was only available for a ten-year period. The board of supervisors could have named a less period than ten years, but they could not exceed the ten years. Ordinarily much less than ten years would be reasonable, and that is indicated in section

4702, Code of 1906, and its subsequent amendments, because there the power to lease for turpentine and pasturage purposes was limited to three years in the case of turpentine, and for one year in the case of pasturage. The law of 1898 did not undertake to place any period of time in which the buyer of timber could have to remove it. The most favorable view to the appellant is that the board of supervisors had the power implied from the right to sell to grant such reasonable time not in excess of the constitutional period as the peculiar facts and situation confronting them warranted.

The second alleged contract referred to in the majority opinion undertaking to extend the period for removal beyond the original period was clearly unwarranted by law and did not in fact purport to sell any right to the timber whatever. The contract expressly recited that the Nicholas Manufacturing Company is now the owner of the merchantable timber referred to the time at which the contract was made, and proceeded to grant the company an extension of one year of this right to cut and remove its said timber and pine wood from the said land, and have its other rights with reference to said timber and wood, referring, of course, to its right under its original contract to enter the land, construct roads, tramways, and railroads and to do such other things as were necessary under the original contract. It did not intend, nor did the other contracting party expect, any new right to the timber itself. Having granted a longer time in the original contract than they were warranted in granting, they have exhausted their power under the law as to the time. How this order can be construed as a new grant is beyond my comprehension. Both parties were under the impression, according to the contract, that the Nicholas Manufacturing Company was the owner of the timber, and certainly neither contemplated a new sale of the timber and wood.

It is true that the value of the timber between the time of the original contract and the date of the suit had greatly increased, and much is said about the hardship, especial-

ly in the *amici curiae* brief, that would following a holding that ten years' limitation should be applied that would result to people who bought on the faith of the law as it was then understood. We, of course, cannot know what understanding people had of the law; but we must presume that each litigant knew the law. All legal proceedings must proceed upon this idea unless there are fiduciary relations, or some other consideration warranting in particular cases special relief. It seems to me that the law is so plain as to what a lease is that certainly a prudent buyer would have had some test made as to the legality of his contract under section 211 of the Constitution and the common law of this state before investing very heavily. However that may be, the court cannot administer the law upon any basis other than to declare the law to be what it is. If the parties mistake the law and in consequence suffer, the court cannot shrink from its duty on that account. The hardship would result any way, and it would depend entirely upon whose ox was gored, because where one sells and another buys, and prices subsequently soar, some one is bound to lose something. We can only declare rights as we find them upon the record and the law. Our rights and our powers and duties to adjudicate controversies are granted by law and measured by law. We can know no distinction. We must administer justice according to law, without fear, favor or affection, to the rich and poor alike, to the individual and corporation alike, and we should not shrink from declaring that to be the law which is the law, even though hardship may result and people may suffer thereby. The policy of a state to keep these sixteenth sections for the use of the schools and its proceeds and rentals available for that use is clearly and unmistakably indicated in section 211 of the Constitution, and whether that policy be wise or otherwise is not for us to consider. We are bound to adhere to the law as we find it.