### Hood *v.* Foster.

(Division B. May 24, 1943.)

[13 So. (2d) 652. No. 35379.]

Henley, Jones & Woodliff and Carroll Kemp, all of Hazlehurst, for appellant.

McNeil, Jones & Zama, of Hazlehurst, for appellee.

Argued orally by W. S. Henley, for appellant, and by R. L. Jones, for appellee.

Anderson, P. J., delivered the opinion of the court.

Appellee Foster was the owner of an unexpired ninety-nine year agricultural lease of 50 acres of sixteenth section land in Copiah County. The lease was made in 1853. When this suit was begun it had about ten years to run before it expired. In addition he owned a like lease on 90 acres of adjoining land. The timber on the 50 acres is involved. After Foster acquired his agricultural lease on the 50 acres the board of supervisors of Copiah County sold and conveyed the merchantable timber thereon to the appellant Hood. Hood was proceeding to cut and remove the timber when Foster filed his bill to enjoin him therefrom on the ground that he, Foster, by virtue of his agricultural lease became the owner of the timber to the extent of estovers, which right would suffer irreparable injury by the removal of the merchantable timber. A temporary injunction was granted. The cause was heard on original bill, answer, motion of Hood to dissolve the injunction, and on evidence, resulting in a decree making

the injunction perpetual. From which decree Hood prosecutes this appeal.

An agricultural lessee is entitled to what is known in the law as estovers, which is the right of the tenant to use during his lease whatever timber there may be on the leased premises necessary to promote good husbandry. 1 Bouv. Law Dict., Rawle's Third Revision, page 1084. The right includes, when necessary for that purpose, timber for fencing, bridges, corn cribs, cotton houses, fire wood, repairs and other necessary purposes. The main question in this case is whether or not the board of supervisors has the right under the law during such an agricultural lease to sell the merchantable timber on the leased premises and permit it to be removed by the purchaser over the protest of the lessee.

Ninety-nine year leases of sixteenth section lands are no longer permitted by law. Section 6759, Code of 1930, provides that these lands not in a municipality may be leased for a term of not exceeding fifteen years and in a municipality for a term not exceeding twenty-five years. Sections 6761 and 6762, Code of 1930, provide for the sale of the timber on such lands and the leasing of the mineral therein. Section 6763, Code of 1930, provides as follows: "Every such lease shall empower the lessee to enter upon the premises leased and explore and develop such premises for oil, gas, or either of them or such other mineral as may be included in the terms of said lease and to do all things necessary or expedient for the production and preservation of any of such products; and shall inure to the lessee, his heirs or assigns."

There is no such statute with reference to the purchaser of the timber. In order to hold that the right of the purchaser of the timber is superior to the tenant's estovers right, as we view it, it would be necessary to overrule former decisions of this court. In Dantzler Lbr. Co. v. State, 97 Miss. 355, 53 So. 1, 4, the court used this language: "And, moreover, when we remember that these leases had 70 years and more to run, during which time the board *could not sell* [*the timber*], *except to* [*the les-*

*see], or with the consent of the lessee,* the inadequacy of price is not so great as it would otherwise seem to be." (Emphasis ours.) In that case the lumber company was the ninety-nine year lessee and also the purchaser of the timber. The question was whether or not the timber could be sold at all. The court held that it could provided it was sold to the lessee.

In Fernwood Lbr. Co. v. Rowley, 110 Miss. 821, 71 So. 3, that language used in the Dantzler Lbr. Co. case was approved. The court expressly held that the right to sell the timber during the lease was "only to, or with the consent of, the lessee of the land."

In Lewis v. Myer, 116 Miss. 454, 77 So. 297, there was involved the question whether the lessee of sixteenth section lands had such an interest in the timber thereon that he might recover on a note given him in compromise by one who wrongfully cut the timber on the leased premises. In the opinion the court used in part this language: "It is argued that the lessee of the sixteenth section did not have the right to cut the merchantable timber standing on the land, except when the timber was to be used for estovers, and therefore he had no cause of action. We do not think that this is an open question in this state. In the recent case of Fernwood Lbr. Co. v. Rowley, 110 Miss. 821, 71 So. 3, this court expressly decided that the owner of the lease to a sixteenth section had such an interest in the timber growing on the land as would entitle him to recover damages for the wrongful removal of the timber by a third person. It was also decided in that case that the board of supervisors did not have the power to convey the timber to any one save the lessee or his assignees."

There would be no way of finding the line of demarcation between the agricultural lessee's right of estovers and that of the purchaser of the timber. In one instance the lessee might need all of the timber for estovers and in another he might not need one-third of it. Of course the quantity of timber on different pieces of land varies widely.

It is argued that the principles laid down in Pace v. State, 191 Miss. 780, 4 So. (2d) 270, 275, are decisive of this question in favor of Hood, the purchaser of the timber. We are of opinion there is no merit in that contention. There was involved in that case not timber but minerals. Timber is on top of the ground and minerals are under the ground. This language used in that case shows the radical difference in the two propositions: "The necessity of obtaining the consent of the agricultural lessee to cut and remove the timber for this land is due to the fact that he is entitled to use such portion of it as may be needed for certain purposes." (Meaning, of course, estovers.) The court held that that principle had nothing to do with the minerals. The reason is at once manifest. There is no substantial connection between timber rights and mineral rights. Oil and gas are fugitive products and must be presently taken else they may be lost. Timber is just the opposite. In fact it appreciates in value as time passes. The ninety-nine year leases are expiring all over the state, some of them have already expired, and in a few years all will have passed out of the picture; and in the meantime the timber on the land is increasing in quantity and growth year by year. Therefore, there will be more timber when the leases expire than there is now. Thus it is that ultimately the township schools on the general average throughout the state will reap a profit by waiting. Bidders will then be free of counterclaims and adverse interests and will therefore pay more.

Construing the statutes involved in the light of those decisions it appears that the conclusion is inescapable that the timber can not be sold without the consent of the agricultural lessee.

It is argued on behalf of Hood that Foster was estopped from maintaining his bill by the fact that when the board of supervisors sold the merchantable timber to Hood, Foster was one of the bidders. There is no merit in this contention. There is nothing whatever in the record tending to show that Hood was in any manner

misled by Foster's bidding. On the contrary, the record shows that he knew Foster owned the agricultural lease of the land and wanted the absolute right to the timber. As shown above, Foster, and he alone, had the right to purchase the timber while his lease existed; that no one else had that right without his consent. His idea evidently was that he could get the absolute right to the timber at that sale. We are unable to see anything in this that could have misled Hood in any manner.

Hood contends that equity was without jurisdiction because Foster had a complete and adequate remedy at law. That contention is answered by the decision in the case of Moss v. Jourdan, 129 Miss. 598, 92 So. 689. The court held in that case, quoting paragraphs 5, 6 and 7 of the syllabus:

"The essential features of an 'irreparable injury' are: (1) That the injury is an act which is a serious change of, or is destructive to, the property it affects either physically or in the character in which it has been held and enjoyed. (2) That the property must have some peculiar quality or use such that its pecuniary value, as estimated by a jury, will not fairly recompense the owner for the loss of it.

"Land is per se property of peculiar value, and will be protected by injunction without reference to its quality, use, or value.

"If a trespass is continuous in its nature, and repeated acts of trespass are done or threatened, although each of such acts taken by itself may not be destructive or inflict irreparable injury, and the legal remedy may therefore be adequate for each single act, if it stood alone, the entire wrong may be prevented or stopped by injunction."

Foster's case comes under those principles.

Affirmed.