STATE, ex rel. *v.* DEAR, et al.

In Banc.   May 8, 1950.

No. 37492 (46 So. (2d) 100)

Suggestion of Error Overruled June 12, 1950 (47 So. (2d) 150).

270

**John E. Stone,** Assistant Attorney General, for appellant.

Avery & Putnam, Snow & Covington, and Flowers, Brown & Burns, for appellees, the members of the board of supervisors and their sureties.

**Will S. Wells,** and **Harold Cox,** for appellees, Gus Dear and wife, and Greif Brothers Cooperage Corporation.

**McGehee, C. J.**

This suit was originally brought by the former Attorney General, upon the recommendation of a legislative investigating committee, to recover against the appellees, Gus Dear and his wife, Mrs. Gus Dear, as purchasers, in January, 1944, of certain Sixteenth Section timber on that part of Section 16, Township 4 North, Range 1 East, lying west of Pearl River in Hinds County, for

the grossly inadequate consideration of $500, upon the theory that the sale virtually amounted to a donation of the said timber, in violation of Section 95 of the Mississippi Constitution of 1890, and also against Greif Brothers Cooperage Corporation, which later purchased this timber from the Dears for the sum of $4,000 with actual notice of the consideration paid to the Board of Supervisors of the County for said timber as disclosed from its examination of the order of the Board of Supervisors and the timber deed executed in favor of the Dears, and which was then duly recorded, a decree of the chancery court for the difference between the $500 paid by the Dears to the Board of Supervisors for said timber and the fair market value thereof at the time of the sale to them, the recovery being sought both against the Dears and the said Cooperage Corporation, and also against the members of the Board of Supervisors and the sureties on their official bonds, who are likewise made defendants to the bill of complaint.

The case was tried on an agreed stipulation of the facts, and on certain oral testimony offered by the complainant, but it is conceded that the latter added nothing to the case presented by such agreed statement of facts. At the conclusion of all the evidence offered by the complainant, including the agreed statement of facts, the trial court sustained motions on behalf of all the defendants to exclude the evidence and to render a decree in their favor. Hence this appeal was taken by the Attorney General who sued for the benefit of the educable children of the township, in which the Sixteenth Section is located, on the ground that the Board of Supervisors was without power under Section 95 of the Constitution, while acting as agent for the State which holds the Sixteenth Section school lands and timber as trustee for the benefit of the educable children of the township, to sell said timber for a grossly inadequate consideration, virtually amounting to a donation thereof.

·The agreed stipulation of facts discloses that the de-defendant Cooperage Corporation cut and removed from the land, under its purchase from the Dears, an amount of timber aggregating 875,394 feet, for which it paid the said sum of $4,000 to the Dears after having found from the records that they had purchased the same from the Board of Supervisors at the said grossly inadequate sum of $500.

The agreed stipulation of facts further discloses that "the entire area occupied by such timber is subject to overflow during the fall, spring and winter months". But it would necessarily follow that while this fact was true at the time the Dears purchased the timber, the same consideration entered into its subsequent purchase by the defendant Cooperage Corporation, which was experienced in determining the value of timber; and the said Corporation is of course presumed to have taken this fact into consideration, and the inaccessibility of the timber, when it determined that it could afford to pay therefor the sum of $4,000.

It was further stipulated and agreed that "the Board of Supervisors, after investigation of the property, believed then and believes now that it obtained a fair and reasonable value of the timber and the highest and best price available at the time and under the circumstances." While it is not reasonable that the Board of Supervisors still believes that it obtained the fair and reasonable value of the timber in the light of the knowledge acquired subsequent to the sale that an experienced timber operator had paid $4,000 therefor, such is nevertheless the agreed stipulation that was submitted to the trial court on that issue. At any rate, the members of the Board of Supervisors, and the sureties on their official bonds, are not liable for the losses occasioned by their failure to exercise proper care in ascertaining the reasonable value of the timber sold to the Dears, since they were exercising a judicial function in determining the price at which the same should be sold, and especially in view

of the stipulation that they believed they were obtaining a fair and reasonable value therefor. Section 6598, Code of 1942, Section 6599, Code of 1942; Paxton v. Baum, 59 Miss. 531; Bell v. McKinney, 63 Miss. 187; State use of Lincoln Co. v. Green, 111 Miss. 32, 71 So. 171; Pegram v. State, 121 Miss. 564, 83 So. 741; National Surety Co. v. Miller, 155 Miss. 115, 124 So. 251; Gully v. McClellan, 170 Miss. 405, 153 So. 524; Gully v. Bew, 170 Miss. 427, 154 So. 284; Gully v. Thomas, 171 Miss. 749, 158 So. 465; State ex rel. Bank of Commerce v. Forbes, 179 Miss. 1, 174 So. 67; DeWitt v. Thompson, 192 Miss. 615, 7 So. (2d) 529; Causey v. Gilbert, 193 Miss. 756, 10 So. (2d) 451.

Manifestly, the Dears are not in a position to claim that they were innocent purchasers for value of the timber where it is undisputed that they owned land adjacent thereto, and necessarily knew at the time of their purchase that the sum of $500 was a grossly inadequate price therefor. However, it is argued on behalf of the Greif Brothers Cooperage Corporation that there are no facts whatsoever in this record to support or justify the conclusion or even the inference that this timber was sold by the Board of Supervisors for an inadequate consideration. This contention is made notwithstanding the fact that when it purchased the timber it had already determined that it could afford to pay at least the sum of $4,000 therefor, and had already ascertained that its vendors had paid for this trust property only the sum of $500 as the purchase price.

The defendant Cooperage Corporation is presumed under the law to have known that the Board of Supervisors was selling this timber as agent of the State which held it as trustee for the educable children of the township, and was in duty bound not to sell the same for a grossly inadequate consideration, virtually amounting to a donation, in violation of Section 95 of the State Constitution. The stipulation contained in the agreed statement of facts that the Cooperage Corporation purchased the timber from Mr. and Mrs. Dear without

any notice or knowledge of any infirmity in the title to them ''other than any knowledge shown by the records in the office of the Chancery Clerk'', and the further stipulation that they went into possession of the property and commenced cutting and hauling the timber from the Sixteenth Section land without any knowledge or notice ''except as imparted by the records in the Chancery Clerk's Office'' at Jackson, Mississippi, do not protect it as an innocent purchaser for value, since the knowledge shown by the records in the said office fully disclosed gross inadequacy of the consideration paid by its vendors.

This Court held in the case of Rice et al. v. McMullen, 43 So. (2d) 195, 202, not yet reported in State Reports, as follows:  ''It is well established that the rights of a beneficiary of a trust estate who finds the trust property has been wrongfully transferred to a third party with notice of the trust are clearly defined in law, and are without dispute so far as we know. Such a beneficiary has the right to follow the trust property and to recover the res if he can identify it in the hands of the third party, or he can have judgment against the third party for the value of the trust property. Scott on Trusts, Sections 291.2, 291.7; [4] Bogert on Trusts, and Trustees, Section 867.''

Continuing the discussion  as to the liability of the defendant Cooperage Corporation for the difference in the price paid by its vendors to the Board of Supervisors and the fair market value of the timber in question, and in answer to its claim of being an innocent purchaser for value of the timber, we call attention to the holding of this Court in the case of Dead River Fishing & Hunting Club v. Stovall et al., 147 Miss. 385, 113 So. 336, 337, as follows:  ''A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The

duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor—either immediately or remote—if such deeds or conveyances in any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation. Parker v. Foy, 43 Miss. 260, 5 Am. Rep. 484; Deason v. Taylor, 53 Miss. 697; Alliance Trust Co. v. Nettleton Hardwood Co., 74 Miss. 584, 21 So. 396, 36 L. R. A. 155, 60 Am. St. Rep. 531; Baldwin v. Anderson, 103 Miss. 462, 60 So. 578; Crago v. Vitter, 120 Miss. 103, 81 So. 646.''

Moreover, in the case of State ex rel. McCullen, Land Commissioner, et al. v. Adams et al., 185 Miss. 606, 188 So. 551, 553, this Court held that the subsequent vendee, John Jordan, who purchased from Adams, the patentee of the State, certain land owned by the State in fee simple, was not an innocent purchaser for value thereof ''since John Jordan was sufficiently familiar with the value of the land as to be willing to pay a cash consideration of $1,600 therefor'' and was put on notice of the grossly inadequate price of $160 paid for the land by Adams as recited in the patent, then of record, and delivered to him at the time of his purchase. In the instant case the defendant Cooperage Corporation likewise gained notice of the grossly inadequate consideration paid for this trust property when it examined the recordation of the deed to his vendors, and at a time when the said defendant had determined that the timber was worth at least $4,000. And on this question as to what should put a purchaser upon inquiry, see the cases of Baldwin v. Anderson, 103 Miss. 462, 60 So. 578; Beauchamp v. McLauchlin, 200 Miss. 83, 25 So. (2d) 771.

In the recent case of Koonce v. Board of Supervisors of Grenada County, 202 Miss. 473, 32 So. (2d) 264, 265, it was expressly held by the unanimous decision of this

court that: "* * * the Board of Supervisors had no right to sell this trust property, which it was administering as an agency of the State on behalf of the educable school children of the township in the capacity of a trustee, at such a grossly inadequate price in violation of Section 95 of the State Constitution, which prevents 'lands belonging to, or under the control of the state (from being) donated directly or indirectly, to private corporations or individuals,' etc. This is even true where such lands belong to the State in fee simple, and here the property in question was being held by the State as trustee, and was being controlled through the Board of Supervisors as a trust estate. * * *

"Private individuals who negligently fail to ascertain the value of their own property may, in the absence of fraud, bind themselves by conveyances thereof for a grossly inadequate price, but this is not true of public officials dealing with property held by the State, either in fee simple or as trustee, and especially as trustee, where the price is so grossly inadequate as to virtually amount to a donation, in violation of our State Constitution."

The foregoing announcement of the Court is contrary to the contention made in the brief of the defendant Cooperage Corporation, wherein the Dears have joined, to the effect that the fixing of a price on Sixteenth Section timber by the Board of Supervisors is conclusive and cannot be inquired into in the absence of fraud. It is beyond the power of the Board to make a sale of Sixteenth Section timber under the authority conferred upon the Boards by Section 6599, Code of 1942, for such a grossly inadequate price as to virtually amount to a donation thereof since Section 95 of our Constitution expressly prohibits this from being done. The Constitution is paramount to any authority conferred by a statute when the action taken under the statute is in conflict with the Constitution.

Under the decision in the case of State ex rel. McCullen v. Tate, 188 Miss. 865, 196 So. 755, the lands of the State owned in fee simple by it cannot be sold for a grossly inadequate consideration such as to virtually amount to a donation in contravention of Section 95 of our Constitution, and this would be true whether those in whom there is vested authority to sell the lands shall act negligently or fraudulently. There is greater reason for holding that the Board of Supervisors, while acting as agent for the State which holds property as trustee, cannot bind the State by a sale in violation of the Constitution, whether the action of the Board is due to its negligence, as in the instant case, or due to fraud or collusion. We are unable to agree that the State is precluded from inquiring into the act of its agent so as to protect the beneficiaries of the trust property in the instant case.

The absence of fraud or bad faith is controlling in the instant case only as to the liability of the members of the Board of Supervisors and their bondsmen.

It is true that the case of Dantzler Lumber Co. v. State, 97 Miss. 355, 53 So. 1, 4, and some of the other earlier cases cited by the Cooperage Corporation and the Dears tend to support their contention that the sale of Sixteenth Section timber has been committed by statute to the Board of Supervisors, and that in the absence of fraud or collusion the Courts cannot interfere with their discretion in the matter, but it is to be noted that in the Dantzler case the main question involved was whether or not such statute was in violation of Section 211 of the Constitution, and no mention is made either in the main opinion, concurring opinion, or dissenting opinion in that case of Section 95 of the Constitution. Then, too, the agreed statement of facts therein expressly stated that: "The price paid by defendant for said timber and wood were as much as could be obtained on the market at that time for the same, in view of the facts that it was growing on sixteenth section lands, the right to cut and remove it was involved in some uncertainty, and the defendant

was the owner of the leases." The Court held that it was agreed that the timber was worth $20,000, or rather said sum could have been obtained for it "if the board of supervisors had possessed the authority to make a fee-simple title to the entire property, including the soil on which the timber and wood was growing." At any rate, it is now well settled by the principles announced in the more recent cases that a Board of Supervisors has no right to sell Sixteenth Section timber for a grossly inadequate price, and this is true even though its action in so doing is due to negligence rather than fraud or bad faith. The Board is just without power to so dispose of this trust property, because Section 95 of the Constitution expressly forbids.

But it is urged by the purchasers and their vendee in the instant case that there is no proof in the agreed statement of facts or in the oral testimony to show that this timber was sold for a grossly inadequate price, or what was its actual value at the time it was sold. However, value does not have to be proved with certainty as to the amount in order to show that the consideration is grossly inadequate. The admitted fact that only $500 was received for the timber and that at a subsequent sale, not too remote, and where no substantial change in the conditions or circumstances in the meantime is shown to have intervened, the property brought the sum of $4,000 in a resale to a purchaser of experience in valuing the quantity and quality of timber, is prima facie proof of its value, and especially where the agreed statement of facts states the exact number of feet of timber cut and removed from the land.

In 31 C. J. S., Evidence, Section 181, page 882, it is stated that "value or market price may be shown by either direct or circumstantial evidence", and that "generally, the law assumes that the value of a thing is what it will fetch in the open market, the price which the owner, if willing, but not compelled, to sell could obtain from a buyer, willing, but not compelled, to buy."

Again in Section 182, page 885, of this text, it is stated: "A sale of real property made under ordinary circumstances is evidence of its value at the time of the sale, and may be shown to prove value at a different time provided the time interval is short and conditions remain substantially the same * * *".

To the same effect is the statement in 20 Am. Jur., Section 373, page 340, where it is said that: "Evidence of the price at which property, the value of which is an issue, brought bona fide at a voluntary sale at some time near the time as of which value is to be determined is competent evidence of its value and is one of the best and most satisfactory standards of estimating actual value, although it is not in any case conclusive of value."

We are therefore of the opinion that the complainant made out a prima facie case and showed that the timber was worth at least $4,000, and that it was incumbent upon the purchasers and their vendee to introduce proof that 875,394 feet of timber which was sold for $500 was not sold for a grossly inadequate price as disclosed by the proof on behalf of the complainant. This Court upheld a judgment for $10,800 in the case of Brown v. Ohman, 42 So. (2d) 209, not yet reported in State Reports, for 1,200,000 feet of timber which was alleged to have been situated on overflowed land.

The cause will therefore be reversed and remanded for a new trial as to. the purchasers from the Board and their subsequent vendee, because of the error in excluding the evidence offered by complainant, and affirmed as to the members of the Board of Supervisors and their bondsmen.

Affirmed in part, reversed in part, and remanded.

On Suggestion of Error.
June 12, 1950 (47 So. (2d) 150)

**Alexander, J.**

The cases cited to support the suggestion of error while eventuating in different results are in point chiefly as indicating that the question of disparity in value as constituting pro tanto a donation remains an open question.

We have not taken into account any of the factors which may or may not ultimately support the answer of the appellee. There is no occasion for us to evaluate these factors. We went no further than to hold that the State had made at least a prima facie case and that the matter should be heard on its merits.

Suggestion of error overruled.

**Lee, J.** (dissenting).

As much as I respect the judgment of my brethren, I must, with deference dissent against some of the conclusions reached in the decision of this case.

It is manifestly correct insofar as it absolves the members of the board of supervisors from any liability on account of the sale of timber. They were exercising a judicial function in making the sale, and in determining the price at which the timber was sold. Beginning with Paxton v. Baum, 59 Miss. 531, this principle has been recognized and reaffirmed throughout the years. See authorities cited on this point in the original opinion.

Hinds is the empire county of the state. It is the largest both in population and in wealth. The operation of its affairs is big business. The people, of course, choose their supervisors, who are the fiscal and governing authority of the county. Such officers are usually successful and outstanding business men.

The sixteenth section land here involved was in the wilds of Pearl River swamp. It had some timber on it

which the Board decided to sell. The Attorney General had previously held that boards of supervisors were without authority to hire a timber cruiser to determine the timber holdings on such lands, and pay therefor out of sixteenth section funds. Biennial Report of the Attorney General of the State of Mississippi from July 1, 1939, to June 30, 1941. It was not claimed that the supervisors knew how to estimate stumpage. It is common knowledge that timber was in great demand. Consequently, the board let the timber buyers know—they advertised for bids in a large newspaper, the Jackson Daily News, in three issues December 10, 17 and 24, 1943. Although there was great demand for timber, only three bids were submitted at the January, 1944, meeting, one for $250, one for $350, and Dear's bid for $500. The board accepted the highest and best bid obtainable, and directed the president to execute and deliver the deed. On account of an error—the description had the wrong township— they later executed another deed to correct this error.

The original bill of complaint did not even *charge* the board with fraud on account of this transaction. On the contrary, the Attorney General agreed to a stipulation that the board ''believed then and believes now that it obtained a fair and reasonable value of the timber and the highest and best price available at the time and under the circumstances.''

I do not wonder that, since there was no controversy as to the good faith of the supervisors, the learned chancellor promptly dismissed the bill. There was no evidence of either fraud or bad faith. No doubt if those gentlemen had sworn to their good faith in the proposition, any court would have believed them. But, they did not even have to swear to such fact—the Attorney General admitted it.

Thus the liability of the supervisors passes out of the picture. All are agreed that this was right. They were guilty of no fraud or bad faith. On the contrary, the

perfect good faith of these capable and competent officers was conceded and adjudicated.

Where then do we find ourselves?

The Board had full authority to sell this timber. General jurisdiction of the subject matter of sixteenth section lands is conferred upon the board of supervisors by Section 6598, Code 1942, which provides in part as follows: "The several counties wherein are situated any of such lands have, through their respective boards of supervisors, under the general supervision of the land commissioner, jurisdiction and control thereof, and of all funds rising from any disposition thereof heretofore or hereafter made; * * *".

Express authority to sell the merchantable timber from sixteenth section lands is conferred upon the board by Section 6599, Code 1942, which reads in part as follows: "The board of supervisors having control of any sixteenth section of land or any land taken in lieu thereof reserved for the support of township schools, are hereby authorized and empowered to sell the merchantable timber of any and all varieties, * * *".

In accordance with these statutes, the board made the sale in good faith—they committed no wrong—they are not answerable for their act.

Now we come, in my opinion, to an untenable position: The state authorized the board to sell the timber. It held out such board as its agent. But two parties are necessary to make a trade, one to sell, and the other to buy. The state found no fault with its agent, the board, in selling it, but, through another of its agents, the Attorney General, it discovered a terrible fraud on the part of the buyer. I repeat that both the board and the buyer were necessary parties to the transaction. It is unthinkable to me that one should be exonerated and the other condemned.

The disparity between the price paid to the board, $500, and the price paid by the Cooperage Corporation, $4,000, thus, on paper, showing a profit of $3,500 to Dear,

in my opinion, has catapulted us into grave error. This difference can be clarified when we look deeper into the facts, and carefully weigh one feature, which, it seems to me, has been entirely overlooked.

The map shows and the stipulation admits that this timber was located in an overflowed area, among sloughs and lagoons. Dear owned "the adjoining property providing the sole access to these lands." There was no road to this timber land, and there was no earthly way to get it out of the swamp except over the lands of Dear. A prospective buyer must needs take this difficulty into consideration. Likewise, the board of supervisors. Just how would such purchaser remove the timber? I am mindful that Section 8419, Code 1942, provides for the establishment of a private way. But out of the maze of this procedure, the fact remains that such applicant must pay the damages, and the costs and expenses of the proceedings. Hence such purchaser would have been compelled to reckon with the great difficulty of procuring a right of way or easement from Dear. The board, in selling it, was likewise confronted with this serious obstacle, which, in a large measure, decreased the intrinsic value of the timber on account of its inaccessible location. Accessibility has much to do with value. A seventy-five foot lot on Capital Street might be worth $50,000, whereas a like parcel in a slough or lagoon in Pearl River swamp might not fetch $5.

From a due consideration of this question, I can readily see why the board "believed then and believes now that it obtained a fair and reasonable value of the timber and the highest and best price available at the time and under the circumstances". The power to sell necessitated an adjudication in regard to value. This was done in good faith. I see no reason to disturb it. But being willing to acquit the seller, I am unwilling to condemn the purchaser. L. N. Dantzler Lumber Co. v. State, 97 Miss. 355, 53 So. 1, 3, in my opinion, is not only in point, but com-

pletely decisive of this question. There the Court said in part:

"According to the agreed statement of facts, the timber in controversy was worth, in round numbers, the sum of $20,000, or rather, that said sum could have been obtained for it 'if the board of supervisors had possessed the authority to make a fee-simple title to the entire property, including the soil on which the timber and wood was growing.' It also appears from this agreed state of facts: 'The price paid by defendant for the said timber and wood were as much as could have been obtained on the market at that time for the same, in view of the facts that it was growing on sixteenth section lands, the right to cut and remove it was involved in some uncertainty, and the defendant was the owner of the leases.' The price paid for the timber was $1,550, inadequate, of course; *but it is elementary that mere inadequacy of consideration alone is not ground for setting aside a conveyance of this character. Inadequacy of price must be connected with fraud or other circumstances which tend to bring about such inadequacy before the sale can be set aside by the courts. No other circumstance indicating fraud is alleged in the bill or contained in the agreed statement of facts.*

"*The determination of the price at which such timber shall be sold has been committed by the statute to the boards of supervisors, and in the absence of fraud or collusion the courts cannot interfere with their discretion in the matter.* And, moreover, *when we remember that these leases had 70 years and more to run, during which time the board could not sell, except to or with the consent of the lessee, the inadequacy of price is not so great as it would otherwise seem to be.*" (Emphasis supplied.)

In that case the Lumber Company owned the lease. But, if someone else had purchased the timber, the buyer would have faced the question of trespassing on the Lumber Company's property, if he attempted to remove

the timber. In Fernwood Lumber Co. v. Rowley, 110 Miss. 821, 71 So. 3, this court approved the language used in the Dantzler Lumber Co. case, supra, and said that the right to sell the timber during the lease was "only to, or with the consent of, the lessee of the land". See also Hood v. Foster, 194 Miss. 812, 13 So. (2d) 652. Thus a consideration of $1550, or 7¾ percent of the actual value of $20,000 under the circumstances, could not be classed as inadequate.

In this case, if a purchaser other than Dear had brought the timber, how was he to remove it? The only way to do so was over the lands of Dear, who happened to be in a very advantageous bargaining position, both in buying and in selling. If we follow the same reasoning, how are we to overturn a consideration of $500, or 12½ percent of the sale price to the Cooperage Corporation, under the circumstances of this case?

The Dantzler Lumber Co. case was followed and reaffirmed in Smith County v. Eastman Gardner Lumber Co., Miss., 53 So. 7; Beasley v. McElhaney, Miss., 53 So. 8; State ex rel. Attorney General v. Dunnam, Miss., 67 So. 461, where again the court said that mere inadequacy of price does not vitiate a sale of timber on sixteenth section lands, and refused to overrule the Dantzler case, supra. It has also been approved and cited in J. J. Newman Lumber Co. v. Robertson, 131 Miss. 739, 95 So. 244; Stokely v. State ex rel. Knox, 149 Miss. 435, 115 So. 563; Matthews v. Panola-Quitman Drainage Dist., 158 Miss. 647, 130 So. 910; Gulf Refining Co. of Louisiana v. Terry, 163 Miss. 869, 142 So. 457; Bridgforth v. Middleton, 186 Miss. 185, 186 So. 837; Pace v. State ex rel. Rice, 191 Miss. 780, 4 So. (2d) 270; Merrill Engineering Co. v. Capital Nat. Bank, 192 Miss. 378, 5 So. (2d) 666; Whelan v. Johnston, 192 Miss. 673, 6 So. (2d) 300; and Taylor v. Jackson, 194 Miss. 441, 12 So. (2d) 44.

The case of Rice v. McMullen, Miss., 43 So. (2d) 195, cited in the original opinion, involved the question of a trust set up under a will, and I do not see how it has any application to the question now being decided. The

State is trustee of the sixteenth section lands. It delegates to boards of supervisors the power to sell. Such boards, therefore, stand in the shoes of the State. I cannot grasp the idea of the State's suing itself.

State ex rel. McCullen v. Adams, 185 Miss. 606, 188 So. 551, is also cited in the original opinion. In that case, however, it was a suit brought by the Land Commissioner to cancel, on account of fraud, a patent previously issued by the Land Commissioner. The bill alleged that the application of Mrs. Hunter Adams, by her agent George Adams, made representations which were false, and which induced the issuance of the patent. The answer admitted that the representations were made and were relied on by the Land Commissioner, but averred that they were true. The proof showed that George Adams was in fact purchasing the land for John Adams, but taking the title in John Adams' wife, Mrs. Hunter Adams, because of the fact that John Adams had already purchased as much land as he could do so for that year; and George Adams was familiar with the land in question. The court said that concealment of the fact that a good portion of the land had been recently cleared was the principal inducement to sell at a grossly inadequate price. John Jourdan was familiar with the land and paid $1600 therefor, whereas the State had been paid only $160. And it was said that this fact should have put him on notice; that the muniments of title, including the fraudulent application for patent, would have disclosed the reason; and besides, he acquired no unconditional warranty.

I fail to see how that case is any authority for the question decided here. How does the paying of $4,000 when its seller had paid only $500 put the Cooperage Corporation beyond the pale of protection?

The examination of the records, if made, led to no evidence whatsoever of fraud, because everything was regular on its face—due advertisement for bids had been made—bids had been submitted—the solemn judgment of the board ordered the sale—and a proper deed was executed.

In Koonce v. Board of Sup'rs. of Grenada County, 202 Miss. 473, 32 So. (2d) 264, 456, cited in the original opinion, Koonce bought timber from the board of supervisors. After cutting a considerable part, he discovered an error in his deed, and sought to correct the same. But the board, in the meantime, learned they had sold the timber for a grossly inadequate consideration and declined to correct the deed. In other words, the board declined to go through with the transaction, but, on the other hand, contested the suit. That case most assuredly is not an authority here, because the Hinds County Board of Supervisors contended that they were in good faith, and had received the best price obtainable, and they still maintained this position when the case was tried.

In Dead River Fishing & Hunting Club v. Stovall, 147 Miss 385, 113 So. 336, also cited in the original opinion, it is true that the rule was laid down that a purchaser of lands must take notice of all facts to which his attention may be directed by recitals contained in the conveyances. But the question there up for consideration was the description of the land. The matter of consideration was not involved at all. It is a strained construction indeed, if that case can have any application here. However, if it does, and if the recitals in the deed were sufficient to give notice of the transaction, what evidence of fraud could be gleaned? Everything was regular on its face— due advertisement for bids—submission of bids—a solemn judgment of the board of supervisors—and a deed valid on its face.

In State ex rel. McCullen v. Tate, 188 Miss. 865, 196 So. 755, cited in the original opinion, again we have a case where the Land Commissioner brought suit to cancel a patent issued by a former Land Commissioner. The application for the patent contained gross misrepresentations of fact, and it was on that account that the patent was issued for a grossly inadequate consideration. But the holder of the office victimized instituted the suit, not a different agency of the State.

Brown v. Ohman, Miss., 42 So. (2d) 209, also cited, was simply a case between individuals, wherein recovery was sought on the ground of fraud and deceit in representations as to the amount of the timber on the land sold. There is no such question involved in the decision which has been rendered in the present case.

Moreover, in State ex rel. Attorney General v. Blodgett, 110 Miss. 768, 70 So. 710, where the Attorney General had brought suit to cancel a sale of timber on Sixteenth Section land, worth $3,000, which had been sold for $500, the court took into consideration the fact that the purchaser surrendered the remainder of his lease upon the expiration of the allotted time. The Court said: ''That the board of supervisors had full power in the exercise of its discretion to sell this timber to the lessee of the land, or any one else, was fully settled by this court, in the two cases above cited. The bill and exhibit thereto do not show any fraud or collusion; in fact, the state overlooks entirely a most valuable part of the consideration in its contention, viz., the surrender of the remainder of the lease after the timber has been cut, or at the end of 20 years.''

The decision in this case, to my mind, sets up a peculiar and unusual rule of trade. From time immemorial, barter has been recognized in this country. It is human nature to pay as little as possible for what one buys, and get as much as possible for what one sells. It is rare indeed that one pays more than is required. The board was authorized to sell this timber, but it was not required to do so. Even after advertising its intention to sell, it still had the right to reject bids, which were inadequate or unsatisfactory. But, by this decision, I can see no escape from the conclusion that a purchaser cannot rely on the good faith of the board; for, if the Attorney General presumes to think that the consideration is inadequate, such buyer can be pounced upon by that officer. After a good faith sale by the board, must the purchaser pay more? If so, how much more? Must he go to the

Attorney General and get his approval? There is no such provision in the law! I decline, by what I think to be judicial legislation, to empower the Attorney General to overturn the judgment of the tribunal set up by the Legislature to deal with such matters.

Integrity should be given to the acts of the sovereign's agent in dealing with citizens. In Slay v. Lowery, 152 Miss. 356, 119 So. 819, 821, a patent had been issued by the State for lots slightly in excess of 50 cents each. This Court held that such consideration was not so inadequate as to amount to a donation, in violation of the Constitution. The Court there said: "Appellee is entitled to the benefit of the presumption that the Governor, the attorney-general, and the land commissioner faithfully performed their official duties in fixing the sale value of the lots." See also State v. Roell, 192 Miss. 873, 7 So. (2d) 867.

Deliberate legislation, solemn judicial construction, and long acceptance of the above principle, have given assurance of safety to the purchasers of timber on, and the leases of, Sixteenth Section lands. Occasionally, there are derelictions on the part of officers. But, as badly as I loathe and despise the unjust, or undeserved taking of public money or property, I would leave the responsibility where it has been lodged. In the interest of stability, that course should not be departed from. Of course, fraudulent transactions are altogether different matters. I am greatly disturbed over the far-reaching effects of this decision, because I think it is pregnant with serious consequences.

I would affirm the decree of the lower court in its entirety.