# STATE *ex rel.* McCULLEN, LAND COM'R, *et al. v.* ADAMS *et al.*

(Division B.  May 8, 1939.)

[188 So. 551. No. 33694.]

Robertson & Robertson, and **R. L. Stainton,** all of Jackson, and **Chas. S. Tindall,** of University, for appellants.

**Ernest Kellner** and **Leroy Stockdale**, both of Green-ville, for appellees.

610

Argued orally by **Stokes V. Robertson,** for appellant.

**McGehee, J.,** delivered the opinion of the court.

Upon a final hearing of this cause on the merits, the court below dismissed the bill of complaint of the ap-

pellant wherein it was sought to cancel, as having been obtained through fraud, a certain State Land Patent issued on May 25, 1936, in the name of the appellee, Mrs. Hunter Adams, at a purchase price of $160, and covering 153 acres of land described as the NE¼ of S. 5, T. 16, R. 7, in Washington County, Mississippi, and which had been forfeited to the State for taxes; and also to cancel her deed of conveyance to the appellee John Jordan, executed on October 24th of that year, when the land was in the same condition as when patented, for a cash consideration of $1600.

Section 5 of chapter 174 of the General Laws of 1936 provides, among other things, that "any person desiring to purchase any state forfeited tax land shall make application in writing to the land commissioner for the purchase of such land, and shall state in such application: (a) . . . (b) . . . (c) . . . (d) . . . (e) . . . and (f). Such other specific information as the land commissioner with the approval of the governor may require. Each such application shall be properly sworn to before an officer authorized to administer oaths. The land commissioner may require such additional information with reference to the value of such lands, . . . as he may deem necessary."

The bill of complaint herein alleged the filing of an application in the name of the appellee, Mrs. Hunter Adams, by George Adams, Agent, for the land in question, stating that none of the land was in cultivation; that none of it was open or pasture lands; that it was all cut-over land; and that "the present value of the above described property is not in excess of $————," and that the purchase of the land was intended for the applicant's own use and benefit. The bill further alleged that the state land commissioner relied upon these representations, without any information or knowledge as to their truth or falsity except that furnished in the application. The appellees admitted in their an-

swers that these representations were made and that they were relied upon by the land commissioner; and they then aver that the representations were true. The proof disclosed that the agent, George Adams, was in reality purchasing the land for John Adams, husband of Mrs. Hunter Adams, and taking the patent in his wife's name on account of the fact, as testified to by John Adams, that he had already received a patent for maximum area allowed a purchaser in one year, and that therefore the purchase was not made by the applicant for her own use and benefit; that George Adams was familiar with the nature and character of the land, since he testified that he went over it two or three times a few days before the filing of the application.

The proof further disclosed that beginning in the year 1932 and continuing into 1934 a former owner, A. E. Wilson, cleared a portion of the land each year until he had succeeded in opening up approximately 34 acres thereof, 6 acres of which was planted in cotton in 1934, after having been rendered almost free of trees, and that a good portion of the remaining 28 acres of the cleared land had been disced with a tractor, and that 9 acres thereof was along the roadside. This clearing had been done at an expense of about $265 in addition to the value of the time given to the work by Wilson and his son. Between the year 1934 and the date of the sale of the land by the State to the said Mrs. Hunter Adams in May 1936, under the patent aforesaid, this cleared land grew up in weeds, small bushes and briers, but it is shown that the cost of again preparing it for cultivation would be almost negligible in comparison with the cost of an original clearing. As heretofore stated, the application which purported to give the land commissioner the information desired as to the value of the land, and the filing of which is by the statute hereinbefore referred to made a condition precedent to the right of the applicant to obtain a patent, stated that there was no open or pasture land on the tract, when in

truth and in fact the agent knew that there was then approximately 34 acres of open land thereon. Since the application stated that it was "all cut-over land," the land commissioner had a right to assume that the representation meant that the land had at some time been merely logged. It was correctly stated that none of it was then in cultivation, it being state land, if the applicant understood this representation was to be given a literal meaning, as the State was not farming. Manifestly, however, the concealment of the fact that a good portion of this tract of delta land had been so recently cleared was the principal inducement to the sale at such a grossly inadequate price; and constituted a fraud upon the State. Moreover, the applicant failed to answer other inquiries contained in the application, which the law imposed upon him the duty of answering, and which would have enabled the land commissioner to properly and intelligently determine a fair price to be charged therefor; and which information the commissioner was without authority to waive.

It was held in the case of Streater et al. v. State ex rel. Moore, Land Commissioner, 180 Miss. 31, 177 So. 54, 56, wherein the same George Adams acted as the agent in making the purchase from the State, that "the purchaser of state lands is required to give the Land Commissioner information as to the condition, occupancy, and value of the land, etc., as shown by the application therefor." Further that "the Land Commissioner, being a public officer, could not knowingly accept a fraudulent statement, and if he did so his act would not bind the state, for a public officer must act in good faith in representing the state." Since chapter 174 of the Laws of 1936, supra, requires the filing of an application under oath, giving the information called for therein, as a condition precedent to the right to obtain a patent, such application constituted a part of the patentee's muniment of title, and with which the appellee, John Jordan, as vendee of the patentee, was

charged with notice. The patent was duly recorded in the chancery clerk's office of Washington County prior to the purchase by the appellee John Jordan, and the original was delivered to him along with his deed of conveyance from the patentee. The patent recited that it was issued under the provision of chapter 153, (section 6007 et seq.) of the Code of 1930, and House Bill No. 275 of the Laws of 1936, meaning chapter 174 thereof; and since John Jordan was sufficiently familiar with the value of the land as to be willing to pay a cash consideration of $1600 therefor, the grossly inadequate price of $160 paid for the land as recited in the patent, then of record and delivered to him as aforesaid, should have put him on inquiry as to how it so happened that the State was induced to issue the patent for such a grossly inadequate consideration. The muniments of title, including the fraudulent application for the patent, would have disclosed the reason. Also, the mere fact that his grantor was unwilling to make an unconditional warranty of the title to him should have excited his interest in that behalf in connection with the recital in the patent as to the price paid to the State therefor. It was said in the case of Dead River Fishing & Hunting Club v. Stovall et al., 147 Miss. 385, 113 So. 336, 337, that: "A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor—either immediately or remote—if such deeds or conveyances in any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and

would be disclosed by a diligent and careful investigation. Parker v. Foy, 43 Miss. 260, 5 Am. Rep. 484; Deason v. Taylor, 53 Miss. 697; Alliance Trust Co. v. Nettleton Hardwood Co., 74 Miss. 584, 21 So. 396, 36 L. R. A. 155, 60 Am. St. Rep. 531; Baldwin v. Anderson, 103 Miss. 462, 60 So. 578; Crago v. Vitter, 120 Miss. 103, 81 So. 646.''

Wherefore, we are of the opinion that the claim of the appellee John Jordan, as an innocent purchaser for value without notice, within a legal sense, is not sustained by the proof in this case. In so holding, we are not departing from the rule that the finding of the chancellor on conflicting evidence will not be disturbed unless manifestly wrong, since there is but little substantial conflict in the testimony. We merely conclude that the court below was in error in holding that the undisputed facts did not constitute fraud, and that he was in error in holding under the record of the title that the appellee John Jordan was protected as an innocent purchaser for value without notice. If the State is to lose its lands through the fraud of purchasing agents merely because a patentee has subsequently conveyed the land to a person who has no actual knowledge of the fraudulent representations made in writing to the land commissioner, and where such subsequent purchaser has failed to avail himself of the means of obtaining the necessary information in regard thereto, then the way would be opened, by judicial construction, for defrauding the State of vast quantities of the tax forfeited lands which it now holds. It is desirable that these lands be sold and placed back on the land assessment rolls, but not through the perpetration of fraud on the State to that end. The Appellee was entitled to the relief prayed for in this case.

Reversed and decree here for the appellant.