STATE *ex rel.* McCULLEN *v.* TATE *et al.*

(Division A.   June 3, 1940.)

[196 So. 755.   No. 34163.]

Jordan, Antoon & Peteet, of Greenwood, for appellant.

Berry **D. Brown** and **Means Johnston**, both of Green-wood, for appellees.

Argued orally by **R. A. Jordan**, for appellant, and by **Berry D. Brown**, for appellees.

**Griffith, J.,** delivered the opinion of the court.

This is a suit by the Attorney-General and the State Land Commissioner to cancel a forfeited tax land patent issued to one of the appellees by a former state land commissioner, on June 26, 1936, purporting to convey the state's title to forty acres of land situated in Leflore County about 3½ miles south of Itta Bena. The land abuts immediately upon a principal public highway, leading directly to market, and had been in general cultivation as a cotton farm for several years continuously up to and including the year 1933. For the year 1934, the owner was unable to secure a tenant and the place was idle during that year, as well as in 1935, except that a squatter occupied the house thereon during a part of the years 1934 and 1935.

It was in 1933 that all parts of this state experienced the depths of the financial depression which prevailed throughout the country. In that year hundreds of thousands of acres of land were sold to the state for delinquent taxes, including the small farm here in question. In some counties in that year, as much as 40% of the total landed area was sold for taxes. Large numbers of small farmers and their tenants were obliged to leave their homes and seek employment where current wages could be obtained. All this is a part of the history of the times.

But at the close of the year 1935 and with the opening of 1936, conditions had so much improved that an extremely heavy burden was thrust upon the State Land Office in the endeavors of former owners to regain their forfeited land, and in the inevitable presence of speculators who never fail to appear in such situations. Seeing this, the Legislature by an Act approved March 26, 1936, Chap. 174, Laws 1936, sought to meet the occasion by additional machinery and additional safeguards as compared with previous public land laws. By Section 5 of this Act it was provided that a purchaser of state

forfeited tax lands must first file a sworn written application which must give therein, and for the manifest purposes to be served, the detailed information mentioned in said section. In State ex rel. v. Adams, 185 Miss. 606, 188 So. 551, we held that this application is a condition precedent to the right to obtain a patent to forfeited state tax lands, and that when the application is taken by its four corners and considered in its material aspects, the averments thereof must be in a sufficient approximation to the substantial truth as not to amount to a palpable misrepresentation of the facts. And to the same effect is Streater v. State ex rel., 180 Miss. 31, 177 So. 54.

Without going into the various details of the application in the present case, it is enough to say that thereby it was represented, in effect, that the land had been abandoned by its owner for about ten years and that there were no improvements on it except "one rotted negro cabin" of no value, and the total value of the property was given as "not in excess of $50.00." The patent was issued for $45. Yet, as already stated, and it is undisputed, the land had been regularly cultivated and occupied up to and including the year 1933, and appellee by his own proof admits that the residence was a house of three rooms and that upon the expenditure by him of only $100, soon after his purchase, the house was made a fit dwelling place for his tenant, and that upon the expenditure of $100 additional on the land, it made 15 bales of cotton in 1937, the next season succeeding his purchase in 1936. The years from 1925 to 1930 were among the best in general conditions among cotton farmers in this state. A representation that a cotton farm, although small, had been abandoned by its owner during any of those years would mean one thing while an abandonment in or about 1934 would mean something entirely different as respects its value.

Appellees contend, however, that the Streater and Adams cases are not applicable here because, as they argue, the land commissioner did not rely on the repre-

sentations made in the application. The agent of the patentee testified that he was in the land commissioner's office in the interest of other lands in the vicinity of this particular tract when the land commissioner voluntarily offered him this land, and that the land commissioner stated that an appraisal had been made of it at $50. The agent says that he then went and looked at the land, made some inquiries about it, and upon his return made out the application, adopting therein the valuation already placed on it by the land commissioner.

The testimony as to statements made by the land commissioner was admitted over the objections of the state, and we are not here holding that this evidence should have been received. We do not pass on that question; but we say that, admitting that such a statement was made and that the appraisal as stated had been made, these do not foreclose the state under the facts here shown in evidence. The state land commissioner cannot validly sell the lands of the state at a grossly inadequate consideration; and hence neither he nor any appraiser may make an appraisement at a price grossly less than the fair and adequate value of the land, and the land commissioner cannot rely on any such grossly inadequate fixation whether he made it himself or whoever made it.

This matter of the sufficiency of the consideration for a patent to state tax forfeited land was fully explored in Slay v. Lowery, 152 Miss. 356, 119 So. 819, and the report of that case shows that the judges were all in agreement that a patent for a grossly inadequate consideration cannot be allowed; that such a transaction would be in contravention of the provisions of Section 95, Constitution 1890, which prohibits the donation, directly or indirectly, to individuals or to corporations, of any of the lands belonging to, or under the control of the state. See, also, the language used in the Streater case.

Here all the witnesses, save one, who were in a position, from actual knowledge and observation of this land

and of land values in that area, to furnish dependable evidence, placed the value at from $10 to $30 per acre at the time of appellees' patent; and we have already briefly stated its actual physical situation and what the small expenditure of $200 on house and land enabled it to do the next year succeeding its pretended purchase. The lowest estimate of its value placed by any witness in the case was the one above excepted. After first testifying to a value of $10 an acre, he receded in a later answer to $5 per acre. But if we take that extremity of estimate, the land was worth $200, yet it was conveyed to appellees who were strangers to the land for $45.

We will not attempt to lay down any precise rule by which it may be determined in every case what is a gross inadequacy of consideration. It is enough to say in the present case, that there is a gross inadequacy in a consideration of less than one-fourth of the lowest estimate made by any qualified witness who made any estimate at all, and when the real facts show that the said lowest estimate is itself one in extremity; and this must result in a cancellation of the patent.

As already mentioned, the patentee here was a stranger to the land, so that there is not here involved the provisions made by law for the regaining of the title by those who were the owners thereof at the time of the tax sale. What effect Section 95 of the Constitution would have in those cases is not now before us.

Reversed, and decree here for appellants.