ROBERT E. STEWART and GLORIA H. STEWART, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stewart v. Commissioner
Docket Nos. 16518-83, 26407-84.[1]
United States Tax Court
T.C. Memo 1986-295; 1986 Tax Ct. Memo LEXIS 308; 51 T.C.M. (CCH) 1446; T.C.M. (RIA) 86295; July 21, 1986; VACATED AND REMANDED March 31, 1988 John G. Gourlay, Jr., for the petitioners. Robert W. West, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, *309 Judge: Respondent determined the following deficiencies and additions to petitioners' income taxes: Tax Year
Additions to Tax
Docket No.
Ended
Deficiency
Sec. 6653(a)(1) [2]
Sec. 6653(a)(2)
16518-83
12/31/78
$73,279.80
$3,960.42
12/31/79
31,604.02
1,580.20
12/31/80
14,065.07
739.36
26407-84
12/31/81
51,874.88
2,593.74 *
12/31/82
18,535.45
926.77 **
After concessions, [3] the only issues remaining for decision are the fair market values, for purposes of section 170(a), of three leasehold interests in real property donated in 1978 and 1981 by petitioner Robert E. Stewart to several charitable organizations. [4]
*310 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto, as well as the oral stipulations made at trial, are incorporated herein by this reference. Petitioners Robert E. Stewart (hereinafter petitioner) and Gloria H. Stewart, husband and wife, resided in Rankin County, Mississippi, at the time the petitions in docket Nos. 16518-83 and 26407-84 were filed. Joint Federal income tax returns were filed by petitioners for each of the calendar years 1978 through 1982. Petitioner has been engaged in the business of home building and real estate development since 1961. In 1970, petitioner and his then 50 percent partner, Associated Constructors, Inc., began to purchase lands for the development of a residential subdivision in Rankin County. On February 2, 1972, as part of an acquisition of land for this project, petitioner and Joseph Campbell (Campbell), one of the principals of Associated Constructors, Inc., acquired the unexpired terms of two leasehold interests in what is commonly referred to as sixteenth section land. [5]
*311 To help provide for the needs of the subdivision, petitioner decided to locate a sanitary sewage lagoon on the leased sixteenth section land. In order to effectuate this plan, on August 28, 1972, petitioner and Campbell applied for an extension or renewal of the existing sixteenth section leases.The Rankin County Board of Supervisors (hereinafter the Board of Supervisors or the Board) thereupon appointed three persons owning land in Rankin County, to appraise the land and report to the Board. [6] Though none of the three people who were appointed were appraisers or held any interest in a sixteenth section lease, each of the three did own land in Rankin County in close proximity to the sixteenth section land at issue. The three recommended to the Board of Supervisors that the 443-acre tract be leased at a rate of $2.00 per acre per year. The Board, in its minutes dated September 5, 1972, stated that after receiving this report and "having examined said report and inquired into the matter finds and determines that said sum of $886.00 per year represents the ground rental value of such land." *312 On September 5, 1972, the two existing leases were replaced with a new twenty-five-year lease having an annual rental rate of $2.00 per acre (hereinafter referred to as the Sixteen Section Lease). The only restrictions present in the Sixteenth Section Lease were as follows: It is expressly understood and agreed that the lessee shall have no right to sell and/or remove any sand, clay, gravel and/or dirt from the leased premises, and that all such sand, clay, gravel and dirt are hereby reserved from this lease, together with the right of ingress and agress to remove the same and all necessary or desirable rights in connection therewith. There is also reserved from this lease all timber, oil, gas and minerals now or hereafter on, in and under said land, with the right of ingress and egress to remove the same and all necessary or desirable rights in connection therewith. Sometime after the Lease was entered into, petitioner formally requested the Board of Supervisors to allow him to remove timber from the land for the purpose of constructing the sewage lagoon. On January 7, 1974, the Board requested the Mississippi Forestry Commission to make an appraisal of the timber. During *313 this same time period, petitioner, with the approval of the Board, also had an independent appraisal made. The Forestry Commission did not appraise the timber. Several interdepartment memoranda, written in the latter part of February 1974, indicate that the Commission was of the opinion that the sale was improper because, in its view, the land was classified as forest land. The sale to petitioner, however, did occur, with petitioner paying the independently appraised price to the Rankin County Board of Education. Sometime thereafter, the timber was removed and petitioner began construction of the sewage lagoon. When the Forestry Commission learned of the sale, it issued a letter to the Board, recommending, inter alia, that petitioner's lease be canceled, and that petitioner be charged double the value of the timber in view of the questionable nature of the sale. No action was taken, however, to cancel the lease. [7] Construction of the lagoon was completed in 1974 and the lagoon has been in continuous operation ever since. There were also two abandoned sand pits located on the sixteenth section land. *314 On June 21, 1976, the Board granted Cox Construction Co., Inc. the right to remove sand and sand-clay topping from the sand pits, in exchange for a payment of $0.11 per cubic yard removed. On December 22, 1978, following the submission of sealed bids, petitioner, as highest bidder, was granted by the Board the right to remove and sell sand and/or sand-clay topping from the sixteenth section land in exchange for a payment of $0.11 per cubic yard removed.Petitioner subsequently removed and sold approximately 3,288 cubic yards of sand to an unrelated third party at a rate of $0.25 to $0.30 per cubic yard. Through a series of transfers, on July 28, 1975, petitioner became the sole owner of that portion of the Sixteenth Section Lease pertaining to a 40-acre tract and that portion pertaining to an adjoining 3.8-acre tract. On that same date he also became a 70 percent owner of that portion of the Lease relating to a 30-acre tract. On December 28, 1978, petitioner conveyed his leasehold interest in the 40-acre tract to the Rankin County School District for $1.00. [8] The Northeast Rankin Attendance Center School was subsequently constructed on the said property. On their 1978 tax return *315 petitioners claimed a charitable contribution deduction based on an estimated value for the leasehold interest of $243,500.00. This deduction was disallowed by respondent, who allowed a charitable deduction of only $669.19. On January 10, 1981, petitioner conveyed his 70 percent leasehold interest in the 30-acre tract to the Rankin County YMCA for $1.00. [9] Petitioner conveyed his entire leasehold interest in the 3.8-acre tract to the Rankin County School District for $1.00 on April 1, 1981. On their 1981 tax return, petitioners claimed charitable contribution deductions based on estimated values for these leasehold interests of $147,000 and $27,720, respectively. These deductions were disallowed by respondent, who allowed a charitable deduction of only $378.66. [10]
*316 On September 5, 1972, the fair rental value of the property underlying the Sixteenth Section Lease was $25 per acre per year. OPINION The ultimate issue for decision is whether petitioners are entitled to charitable deductions, pursuant to section 170(a), in excess of the amounts allowed by respondent, for contributions made in 1978 and 1981 of leasehold interests in a 40-acre tract, a 30-acre tract, and a 3.8-acre tract of sixteenth section land. There is no dispute here that the donations were in fact made to qualified donees under section 170(c). To determine the allowable deduction, however, we must determine the fair market value of the donated property, to wit, "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs. Resolution of this issue depends, in turn, on the threshold question of whether the Sixteenth Section Lease, including the donated portions thereof, was a valid lease having any ascertainable value. In making this determination we must look to Mississippi law, as interpreted *317 by the highest court of that state. Aquilino v. United States,363 U.S. 509, 512-413 (1960); Morgan v. Commissioner,309 U.S. 78, 80 (1940); Commissioner v. Estate of Bosch,387 U.S. 456, 465 (1967). Petitioners contend that the Sixteenth Section Lease was properly executed in accordance with the provisions of the Mississippi Code, that the rent prescribed in the lease was fair and adequate, and that, accordingly, the lease was valid in every respect. [11] Respondent, on the other hand, asserts that the consideration in the lease was grossly inadequate, and that therefore, the lease was void ab initio under Mississippi law. *318 Petitioners direct our inquiry to section 29-3-52 of the Mississippi Code which provides: Any lease of sixteenth section lands, or lands granted in lieu thereof, executed and recorded in substantial conformity with the provisions of this chapter shall be deemed to be prima facie valid, and defects in ministerial or procedural acts alone shall not affect the validity of any such lease, as far as a bona fide purchaser or encumbrancer for value of any such lease is concerned. Any such purchaser or encumbrancer shall be entitled to rely upon the validity of any such lease insofar as the interest of the state or any political subdivision thereof, the public, or any school district is concerned. Nothing in this section shall prohibit any party from challenging the validity of any lease on the grounds of inadequacy of consideration given for the lands involved in the lease. [12] [Miss. Code Ann. sec. 29-3-52 (1985)] Petitioners also note that the Supreme Court of Mississippi has indicated that the Board of Supervisors, in carrying out its responsibilities in leasing sixteenth section land, is presumed to have complied with *319 the laws of Mississippi. Edwards v. Harper,354 So.2d 256, 258 (Miss. 1978). Here the Lease was executed in substantial conformity with the provisions of Mississippi law and thus we are of the opinion that the Mississippi Supreme Court would find the Lease to be prima facie valid under the first paragraph of the above statute. When the Sixteenth Section Lease was renewed, the Board of Supervisors, purportedly acting in compliance with section 29-3-65 of the Mississippi Code (as in effect on September 5, 1972 -- the date the lease was renewed), appointed three persons owning land in Rankin County, in close proximity to the sixteenth section tract in issue, to appraise the rental value of the property. [13] These three people recommended $2.00 per acre per year as an appropriate rental value for the 443-acre tract. The Board of Supervisors determined *320 that $2.00 per acre per year was a reasonable rental rate, and re-leased the sixteenth section tract at that rate for a term of 25 years. However, this is not the end of our inquiry. As respondent correctly points out, the above-quoted provisions of section 29-3-52 of the Mississippi Code indicate that the validity of a sixteenth section lease may be challenged on the grounds of inadequate consideration. [14] In fact, the Mississippi Supreme Court has held on several occasions that a lease of sixteenth section land to a private individual by the board of supervisors -- who act as trustees *321 in administering the property -- is void where the lease is for a grossly inadequate consideration, because in that case there has been, in effect, a donation of public property to a private person in violation of Article IV, section 95, of the Mississippi Constitution. See, e.g., Keys v. Carter,318 So.2d 862, 864 (Miss. 1975); Holmes v. Jones,318 So.2d 865, 869 (Miss. 1975). Thus, we are faced with the difficult task of determining whether the consideration required to be paid as rent in the Sixteenth Section Lease was grossly inadequate. Precise guidelines have not been established for determining whether consideration is grossly inadequate, as this court-created concept has evolved *322 on a case-by-case analysis. The Supreme Court of Mississippi has indicated in several instances involving sixteenth section leases that the consideration stated in the lease was grossly inadequate. In Tally v. Board of Supervisors of Smith County,353 So.2d 774, 775 (Miss. 1978), for example, the court stated in dictum that the consideration was grossly inadequate when sixteenth section land was leased at rates ranging from twenty cents per acre to eighty-two cents per acre (apparently per year). The court resolved this controversy on another issue, however, and as such, made no mention of the fair rental value of the property. In Holmes v. Jones,supra, the court held that a prima facie case was stated against the Board of Supervisors because the consideration in a lease of 150 acres of sixteenth section land in Rankin County was grossly inadequate. In that case the fair rental value of the property was stated to be $900 per year and the rent required in the lease was $37.50 per year -- a fair-market-value-to-stated-value ratio of 24 to 1. 318 So.2d at 869. In Keys v. Carter,supra, the court was again faced *323 with determining the validity of a sixteenth section lease in Rankin County. In response to a general demurrer, the court stated that if, as alleged, the consideration required to be paid in the lease of a 320-acre tract was $170 per year, when the fair rental value of the land was $4,000 per year (a ratio of 23.53 to 1), then the lease must be held to be void. 318 So.2d at 864. Conversely, a sixteenth section lease was not held to be invalid in Edwards v. Harper,354 So.2d 256, 258-259 (Miss. 1978), where the court determined that the stated consideration of $400 for a ninety-nine-year lease of seventy-five acres of sixteenth section land was a reasonable rental. The court also indicated, albeit reluctantly, in another action involving the Board of Supervisors of Smith County, Tally v. Board of Supervisors of Smith County,323 So.2d 547, 551 (Miss. 1975), that it would not held as a matter of law that a yearly rental of forty cents per acre for sixteenth section land was grossly inadequate. In that case, however, the court was not presented with evidence as to the fair rental value of the property. Along this same line, the *324 Supreme Court of Mississippi has expressed the view that the fair market value of timber removed from sixteenth section land may be recovered by the state where the timber has been sold for grossly inadequate consideration. In this context, the court has indicated that a sale price of $500 for sixteenth section timber worth $4,000 (a ratio of 8 to 1) was consideration so grossly inadequate as to render the sale virtually a donation of public property within the prohibitions contained in the state constitution. State v. Dear,212 Miss. 620, 55 So.2d 370, 374 (1951). See State v. Dear,209 Miss. 268, 47 So.2d 150 (1950); State v. Dear,209 Miss. 268, 46 So.2d 100 (1950); see also Koonce v. Board of Supervisors of Grenada County,202 Miss. 473, 32 So.2d 264 (1947). The court has also applied this concept to other actions involving state-owned land. In State v. Tate,188 Miss. 865, 196 So. 755 (1940), for instance, a suit was brought to cancel a patent purporting to convey the state's title to forty acres of land. The court canceled the patent, ruling that it was invalid because the consideration paid *325 ($45) was grossly inadequate when compared to the fair market value of the land ($200) (a ratio of 4.44 to 1). 196 So. at 757. Likewise, in State v. Adams,185 Miss. 606, 188 So. 551 (1939) the amount paid for a patent to convey land ($160) was held to be grossly inadequate when it was compared to the fair market value of the land ($1,600) (a ratio of 10 to 1.)[15]
*326 In the instant matter, respondent's expert witness has provided us with evidence indicating that on the date that the Sixteenth Section Lease was entered into [16] (September 5, 1972), the annual fair rental value of the property was $25 per acre, and we have accepted it as the basis for our finding as to the fair market value of the lease. Respondent's expert witness, Jerry D. Mask, has been engaged in the real estate appraising business in the Mississippi area since 1965. Mask estimated the fair rental value of the entire sixteenth section tract as of September 5, 1972, and also estimated the value of the leasehold interests in the 40-acre and 30-acre tracts as of 1978 and 1981, respectively. Here, as with petitioners' expert, we need only review the methodology used in arriving at the fair rental value for the entire tract in 1972. In making this determination, Mask reviewed 16 sales of nonsection sixteenth section land, with plot sizes ranging from 38 acres to 799 acres, and sales prices ranging from $425 per acre to $5,500 per acre. The location of each sale was in the general vicinity of the sixteenth section land, and the sales occurred during each of the years 1971 through *327 1976, as well as in 1978. Based on the above information Mask determined that on September 5, 1972, the fee interest in the sixteenth section tract was worth $500,000. Mask then determined that because of the limitations inherent in sixteenth section land (prohibitions on sale, waste, certain uses), a lessor could only expect a 5-percent rate of return. He accordingly determined that the fair rental value of the property on September 5, 1972, was $12,500 per year ($500,000 X 5% = $12,500) or $25 per acre per year. [17]
The accuracy of the data relied on by respondent's expert is not disputed by petitioner. *328 [18] Instead, petitioners rely on evidence presented by their own expert. J. H. Thames, Jr. has served as a real estate appraiser in the Mississippi area since 1968. In his valuation report Thames examined five leases of sixteenth section land executed by the Board of Supervisors which were each entered into at approximately the same time as the Sixteenth Section Lease. The annual per acre lease rates of these tracts varied from $0.25 per acre to $1.25 per acre. Thames concluded his report by stating: It is my opinion that the $2.00 per acre per year lease amount represents a comparable price based on other leases made in the same time period. This does not represent market rent based on arms length transactions between private individuals but based on the past actions of the Board of Supervisors. *329 As is indicated above, petitioners' expert's report merely recited evidence of the consideration required in other Rankin County leases, but specifically disclaimed any opinion as to whether the consideration required in the Sixteenth Section Lease represented a reasonable market value. The value relied on by petitioners was neither realistic nor the result of arm's-length negotiations, and thus, is entitled to little, if any, weight. In light of the foregoing, we are not convinced that the Mississippi Supreme Court would hold the Sixteenth Section Lease to be valid. Accepting the $25 per acre per year figure as the fair rental value of the property, the fair-market-value-to-stated-value ratio in this case is 12.5 to 1 (25 / 2 = 12.5). A review of the Mississippi cases cited above shows that a ratio of such a large magnitude would probably fall within the "grossly inadequate" standard articulated by the Mississippi Supreme Court. In fact, in no less than three of the cases involving state-owned property, the stated consideration was held to be grossly inadequate where the ratio was less than 12.5 to 1.An examination of the cases involving nonstate-owned property similarly *330 yields at least four cases where the consideration was held to be grossly inadequate when the ratio was 12 to 1, or less. The two cases involving sixteenth section land where the court refused to find that the stated consideration was grossly inadequate, Edwards v. Harper,supra,354 So.2d at 258-259, and Tally v. Board of Supervisors of Smith County,supra,323 So.2d at 551, are simply not applicable. In those cases, unlike here, the court was not presented with evidence that the fair rental value of the property was different from that stated in the lease. [19]
In *331 this case, because a deduction is involved, the burden of proof is upon petitioners not only to show error on the part of respondent, but also to prove the amount of the claimed deductions. Bennett Paper Corp. v. Commissioner,699 F.2d 450 (8th Cir. 1983), affg. 78 T.C. 458 (1982); Rockwell v. Commissioner,512 F.2d 882 (9th Cir. 1975), affg. a Memorandum Opinion of this Court, cert. denied 423 U.S. 1015 (1975); Estate of Finder v. Commissioner,37 T.C. 411, 423 (1961). Here, petitioners had to prove the value of the portions of the Sixteenth Section Lease which they contributed to charitable donees in 1978 and 1981. Such values, in turn, depended upon whether petitioners had a valid lease in the first place. We do not hold that the Sixteenth Section Lease here was invalid, but, given our study of the Mississippi cases in this area, we have the gravest doubts about it, and we do hold that petitioners have failed to carry their necessary burden of proof to show that the lease was valid, that the values as claimed by them in their returns were correct, and that respondent's determination was erroneous in *332 this respect. [20]
To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. These cases were consolidated pursuant to an Order of this Court dated April 3, 1985.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. * 50 percent of the interest due on $51,874.88 ** 50 percent of the interest due on $18,535.45↩
3. Petitioners did not present arguments in either their opening or reply briefs concerning the additions to tax for any of the years in issue. We therefore consider these items to be conceded. Rule 151(e); Calcutt v. Commissioner,84 T.C. 716, 721-722 (1985); Bender v. Commissioner,T.C. Memo. 1985-375; Stonegate of Blacksburg, Inc. v. Commissioner,T.C. Memo. 1974-213↩. 4. The deficiencies determined by respondent for 1979, 1980, and 1982, are the result of carryovers of charitable contributions made in previous years. Thus, our determination with respect to the fair market value of the items contributed in 1978 and 1981 will be determinative of the deficiencies for 1979, 1980, and 1982, as well.↩
5. Sixteenth section land is land owned by the State of Mississippi and held in trust by the State for the support of public schools. The origin of sixteenth section land in Mississippi dates back to the formation of Mississippi as a state. At that time Congress directed that every sixteenth section of land in each township (or land designated in lieu thereof) was to be set aside and held in trust for school purposes. For a brief description of the history of sixteenth section land see Papasan v. United States,756 F.2d 1087, 1089-1091 (5th Cir. 1985), affd. in part, vacated in part    U.S.    (July 1, 1986). Prior to July 1, 1978, the sixteenth section land located within each county in Mississippi was to be administered by that county's board of supervisors for the benefit of that county's board of education. Sec. 29-3-1 Miss. Code Ann. (1972). The county boards of supervisors and the county boards of education consist of elected county officials. Effective July 1, 1978, the Mississippi Code was amended to give control of sixteenth Section land to the county boards of education. Sec. 29-3-1 Miss. Code Ann.↩ (1985).
6. All of the 443 acres of the sixteenth section land desired to be leased were located outside any municipality in Rankin County. See infra↩ note 13.
7. The record does not indicate whether the additional amount was paid.↩
8. The instrument of conveyance contained the following language: "It is understood and agreed that the above described property [i.e., the 40-acre tract] is to be used as a site for a public school."↩
9. The instrument of conveyance contained the following language: "It is understood and agreed that the above described property [i.e., the 30-acre tract] is to be used for a non profit YMCA Program. In the event the Assignee does not use the aforedescribed property as part of its YMCA program, then said property shall revert back to the Assignor, Robert E. Stewart, at the end of five years." ↩
10. The allowance in the statutory notice of deficiency for docket No. 16518-83 apparently represents the present value of $2 per acre that petitioner may have been required to pay as rent on the 40-acre tract for the remainder of the leasehold. In docket No. 26407-84, respondent's allowance with respect to the leasehold interests in the 30-acre and 3.8-acre tracts were apparently for similar reasons.↩
11. Sec. 15-1-7 of the Miss. Code Ann. (1972) provides that an action to recover land shall not be made except within ten years following the time at which the right to bring the cause of action accrued. Petitioners urge that pursuant to sec. 15-1-7, any suit brought to void petitioner's lease would have had to have been filed no later than September 2, 1982. Therefore, argue petitioners, this Court cannot consider an issue which a Mississippi court would be barred from hearing. We disagree. Without deciding whether sec. 15-1-7 governs the instant matter, for valuation purposes the critical dates are the dates of the donations, December 28, 1978; January 10, 1981; and April 1, 1981. Johnson v. Commissioner,85 T.C. 469, 478 (1985); sec. 1.170A-1(c)(2), Income Tax Regs.↩ Thus, even if the ten-year limitation period applies, the statute was still open at the time the gifts were made, and we are therefore not precluded from considering this issue.
12. This section was enacted to be effective on and after July 1, 1978. Although it has not, as yet, been interpreted by the Mississippi Supreme Court, a special assistant to the Mississippi Attorney General testified at trial that the statute would apply to leases existing on July 1, 1978.↩
13. Section 29-3-65 of the Miss. Code Ann. (1972), as in effect on the relevant date, required that when any sixteenth section land situated within a municipality became subject to lease, the board of supervisors was to appoint "three disinterested freeholders" of their county to appraise the rental value of said property. As is indicated in our findings, the sixteenth section land in the instant matter was located outside↩ a municipality. The Mississippi Code is silent as to the appraisal of sixteenth section land in this instance.
14. It is also noteworthy that the statute, on its face, speaks in terms of "defects in ministerial or procedural acts." At trial the special assistant to the State Attorney General confirmed that the purpose of the statute was to prevent challenges as to the validity of these leases based solely on technical defects contained in the lease. Hence, there is additional support for an inquiry as to the adequacy of the consideration in the Sixteenth Section Lease.↩
15. For cases dealing with nonstate-owned land see Mathews Brake Hunting & Fishing v. Sneed,475 So.2d 811 (Miss. 1985) (evidence supported a finding that a fixed agreed-upon price of $4,132.89 for the surrender of a share in a corporate hunting and fishing club, was grossly inadequate when the fair market value of the share was $21,000 -- a 5.01 to 1 ratio); Central Financial Services Inc. v. Spears,425 So.2d 403 (Miss. 1983) (foreclosure sale price of $1,458.86 held to be grossly inadequate where twelve days later property sold for $4,000 -- a 2.74 to 1 ratio); Lampley v. Pertuit,199 So.2d 452 (Miss. 1967) (consideration was held to be grossly inadequate where real property was sold for $400 when the fair market value panged from $1,650 to $2,000 -- a 5-4.125 to 1 ratio); Hesdorffer v. Welch,127 Miss. 261, 90 So. 3↩ (1921) (sale of real property set aside on grounds of grossly inadequate consideration where foreclosure sale price was $100 but resale price was $1,200 -- a 12 to 1 ratio).
16. The appropriate valuation date to be used in determining whether the stated consideration was grossly inadequate is the date on which the lease was entered. See Edwards v. Harper,321 So.2d 301, 303↩ (Miss. 1975). 17. In his valuation report Mask arrived at $25 per acre per year as the fair rental value of a 500 acre plot of sixteenth section land. In fact, the lease covered only 443 acres. At trial, Mask explained that because a per acre value was estimated, the $25.00 figure was correct regardless of whether 500 acres or 443 acres were involved.↩
18. Petitioners do argue that as a result of Barber v. Turney,423 So.2d 133 (Miss. 1982), the method used by respondent's expert in arriving at the fair rental value could not have been used by the Board of Supervisors, and thus should not be used here. This contention is incorrect, primarily for two reasons: First, in Barber, the court was interpreting sec. 29-3-63 of the Miss. Code Ann. (1985), which apparently requires that certain sixteenth section land may not be leased or re-leased at a rate of less than five percent of the appraised rental value. That section has no application here, as it applies only to negotiations for leases or for extensions occurring on or after July 1, 1978. See Miss. Code Ann. sec. 29-3-63; Opinion of the Attorney General of Mississippi, dated May 23, 1985. Second, and more importantly, in Barber, the Board of Education appointed an appraiser to determine the fair rental value of a tract of sixteenth section land for the purpose of re-leasing said land. The appraiser determined that the fair market value of the fee interest in the land was $225. He then recommended to the Board that the land be leased at five percent of $225 or $11.25 per acre per year. Though the court required a new appraisal to be made, it indicated that: the Board has the final authority, duty and responsibility to determine the reasonable annual rental amount to be assessed on sixteenth section lands, and it is not bound by a percentage of fair market sale value or fair market rental value of the land. The Board is simply required to lease the sixteenth section land for the fair rental value thereof. Such is required in order for the Board to absolve itself of liability for inadequate rentals. [423 So.2d at 135-136; fn. ref. and citations omitted.] The court clarified its position further in Turney v. Marion County Bd. of Educ.,481 So.2d 770 (Miss. 1985) where it stated that: Barber did not hold that the Board is precluded from using the percentage of fair market sales value method if that method best yields fair rental value. Barber simply holds that the Board is not bound to use that method. The Board may choose its own method of valuation as long as the evaluation results in the fair market rental value of the subject land. [481 So.2d at 779; emphasis in original.] Thus, we find petitioners' arguments to be unpersuasive.↩
19. If the consideration in a sixteenth section lease is found to be grossly inadequate the appropriate remedy is to hold the lease to be void. See, e.g., Keys v. Carter,318 So.2d 862, 864 (Miss. 1975); Holmes v. Jones,318 So.2d 865, 869 (Miss. 1975). This is true whether the board of supervisors executed the lease through negligence, fraud, or collusion. State v. Dean,209 Miss. 268, 46 So.2d 100, 104 (1950); Koonce v. Board of Supervisors of Grenada County,202 Miss. 473, 32 So.2d 264, 265↩ (1947).
20. As we have resolved the threshold question in favor of respondent, we need not reach the parties' contentions with respect to date-of-gift values of the respective donations.↩