**Robert E. STEWART and Gloria H. Stewart, Plaintiffs-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.**

No. 86–4732.

United States Court of Appeals, Fifth Circuit.

March 31, 1988.

John G. Gourlay, Jr., Gerald, Brand, Watters, Cox & Hemleben, Jackson, Miss., James P. Coleman, Ackerman, Miss., for plaintiffs-appellants.

Janet Kay Jones, Fred T. Goldberg, Jr., Chief Counsel, I.R.S., Henry G. Salamy, Michael L. Paup, Chief, Roger M. Olsen, Asst. Atty. Gen., Appellate Sec., Tax Div., Dept. of Justice, Richard Farber, Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, GEE and RUBIN, Circuit Judges.

GEE, Circuit Judge:

Tax cases focus on questions of value. Two concerns are usually paramount: First, whether the taxpayer has a right to the favorable tax treatment claimed; second, whether the value assigned to the claimed right is accurate. In trying this case, however, the Tax Court focused upon whether the taxpayer had an invulnerable title to donated property, in some abstract sense, although no one having standing to do so had ever attacked the taxpayer's title. We remand the case to the Tax Court to be tried on the correct issue: What is the value of the claimed right?

*I. Background*

The Appellant Stewarts attempted to take charitable deductions [1] on their federal income tax returns in 1978 and 1981 based on estimated values of the leasehold interests in sixteenth section lands which they donated to the Rankin County School District in Mississippi.[2] On December 28,

---

**1.** *See* I.R.C. § 170(a).

**2.** As the Tax Court noted

1978, the Stewarts conveyed their leasehold interest in a 40–acre tract to the school district for $1.00. On their 1978 tax return, they claimed a charitable deduction of $243,500 based on an estimated value of the leasehold interest. The Commissioner of Internal Revenue disallowed this deduction, allowing one instead of only $669.19. On January 10, 1981, the Stewarts conveyed their 70% leasehold interest in a 30–acre tract to the Rankin County YMCA for $1.00 and on April 1, 1981 their entire leasehold interest in a 3.8–acre tract to the Rankin County School District for $1.00. On their 1981 tax returns, the Stewarts claimed charitable contribution deductions of $147,000 and $27,720, respectively based on their estimated values for these leasehold interests. The Commissioner disallowed these deductions also, ruling that the Stewarts could take a deduction of only $378.66. The Commissioner disallowed these deductions on the basis that the Stewarts had failed to establish the actual value of their contributions. The Commissioner allowed the Stewarts to deduct only the present value of the rental payments required by the lease to be made to Rankin

County for the remainder of the leasehold. The Stewarts then petitioned the Tax Court to redetermine the value of the leasehold interests.

The Tax Court confined its opinion to deciding whether the Stewarts were *entitled* to the charitable deductions pursuant to § 170(a) of the Internal Revenue Code. *Robert E. Stewart and Gloria H. Stewart v. Commissioner,* 51 T.C.M. (CCH) 1446, 1449 (1986). The court focused on the "threshold question of whether the Sixteenth Section Lease, including the donated portions thereof, was a *valid* lease having *any* ascertainable value." *Id.* (emphasis added). In analyzing the Stewarts's lease, the court expressed concern that the lease was likely invalid because of grossly inadequate consideration that was paid as rent.[3] Mississippi law provides expressly that a lease of sixteenth section land can be challenged for inadequacy of consideration. *See* Miss.Code Ann. § 29–3–52 (Supp.1987).

The Tax Court, however, did not undertake to pass final judgment on the validity of the leases. Rather, the court based its judgment on a determination that the Stew-

---

Sixteenth section land is land owned by the State of Mississippi and held in trust by the State for the support of public schools. The origin of sixteenth section land in Mississippi dates back to the formation of Mississippi as a state. At that time Congress directed that every sixteenth section of land in each township (or land designated in lieu thereof) was to be set aside and held in trust for school purposes. For a brief description of the history of sixteenth section land see *Papasan v. United States,* 756 F.2d 1087, 1089–1091 (5th Cir.1985), affd. in part, vacated in part [478] U.S. [265, 106 S.Ct. 2932, 92 L.Ed.2d 209] (July 1, 1986).

Prior to July 1, 1978, the sixteenth section land located within each county in Mississippi was to be administered by that county's board of supervisors for the benefit of that county's board of education. Sec. 29–3–1 Miss. Code Ann. (1972). The county boards of supervisors and the county boards of education consist of elected county officials. Effective July 1, 1978, the Mississippi Code was amended to give control of sixteenth section land to the county boards of education. Sec. 29–3–1 Miss.Code Ann. (1985).
*Robert E. Stewart and Gloria H. Stewart v. Commissioner,* 51 T.C.M. (CCH) 1446, 1447 n. 5 (1986) [Available on WESTLAW, 1986 WL 20582].

**3.** The Stewarts leased the tracts of land for $2 per acre per year. The Tax Court pointed out that:

accepting the $25 per acre per year figure as the fair rental value of the property, the fair-market-value-to-stated-value ratio in this case is 12.5 to 1 (25 [divided by] 2 = 12.5). A review of the Mississippi cases ... shows that a ratio of such a large magnitude would probably fall within the "grossly inadequate" standard articulated by the Mississippi Supreme Court.

*Stewart,* 51 T.C.M. (CCH) at 1452.

It should be noted, however, that *Barber v. Turney,* 423 So.2d 133 (Miss.1982) calls this analysis in question. The Supreme Court of Mississippi held that the "Board [of Education] has the final authority, duty and responsibility to determine the reasonable rental amount to be assessed on sixteenth section lands, and it is not bound by a percentage of fair *market* sale value or fair *market* rental value of the land." *Id.* at 135–36 (footnote omitted) (emphasis added). The court also pointed out that "it is very probable that there is no uniformity of appraisals or methods in arriving at fair market value and fair market rental value of sixteenth section lands in this state ... different counties use different approaches for determining the fair rental value." *Id.*

arts did not meet their burden of proof to show that the leases were valid and that, because they did not do so, the leases had no value and, necessarily, the values they claimed in their return were incorrect. *Stewart*, 51 T.C.M. (CCH) at 1452.

The court concluded that "because a deduction is involved, the burden of proof is upon petitioners [the Stewarts] not only to show error on the part of respondent [Commissioner], but also to prove the amount of the claimed deductions." [4] *Id.* Thus the Court held that the Stewarts did not carry their *burden of proof* to show that the *leases were valid* and that, as a result, did not prove the value of the portions of the leases they claimed for charitable deductions. *Id.*

## II. *Discussion*

By requiring the Stewarts to meet a burden of proving that they had a valid lease, the Tax Court focused on the Stewarts's *right* to claim favorable tax treatment. This question, however, had already been decided by the Mississippi legislature. The legislature chose to treat leases covering sixteenth section lands as prima facie valid. *See* Miss.Code Ann. § 29–3–52 (Supp.1987). As we note above, this legislative choice does not mean that such a lease cannot be challenged for inadequate consideration. What it does mean, in all likelihood, is that such leases are valid until set aside in some appropriate proceeding. It may be that a lessee's rights in such a leasehold hang by a slender thread indeed, one that could be snapped by a very weak assault. In the Tax Court, however, that bears on valuation of the leasehold, not upon its validity. Thus, even if the lease is suspect, the right to claim favorable tax treatment is a valid one; its value is the issue. The Stewarts have a right, although it may be a *flawed* right.

The Commissioner allowed charitable deductions of $669.19 and $378.66 in 1978 and 1981, respectively, for the value of the flawed leasehold interests. Based on this

valuation, which *does* bear a presumption of correctness, *see supra* note 4, the Stewarts's tax deficiency was assessed. By basing its holding on the failure of the Stewarts to meet a burden of proof with respect to the validity of the right to favorable tax treatment, the Tax Court focused on the wrong question in the case. Given Mississippi's determination as to the validity of sixteenth section leases, the Tax Court should have moved on to examine the question of the accuracy of valuation of an arguably flawed lease. On the remand which we order, it will be the taxpayers' burden to establish the value of their donations. We note the presence in the record of certain stipulations as to value, but we prefer that the Tax Court address the matter of valuation in the first instance.

We VACATE the judgment of the Tax Court and REMAND for that court to try the case focusing of the valuation of a sixteenth section land lease that may be open to challenge for inadequate consideration.

---

**4.** *Parker v. Commissioner of Internal Revenue,* 724 F.2d 469 (5th Cir.1984) held that "the findings of the Commissioner carry a presumption of correctness and the taxpayer has the burden to refute them." *Id.* at 471.