ROBERT E. STEWART AND GLORIA H. STEWART, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stewart v. Commissioner
Docket Nos. 16518-83; 26407-84.[1]
United States Tax Court
T.C. Memo 1988-402; 1988 Tax Ct. Memo LEXIS 429; 55 T.C.M. (CCH) 1730; T.C.M. (RIA) 88402; August 29, 1988. John G. Gourlay, Jr., for the petitioners. Robert W. West, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined the following deficiencies and additions to petitioners' income taxes: Tax Year
Additions to Tax
Docket No.
Ended
Deficiency
Sec. 6653(a)(1) [2]
Sec. 6653(a)(2)
16518-83
12/31/78
$ 73,279.80
$ 3,960.42
-
12/31/79
31,604.02
1,580.20
-
12/31/80
14,065.07
739.36
-
26407-84
12/31/81
51,874.88
2,593.74 *
12/31/82
18,535.45
926.77 **
*430 After trial, this Court filed its Memorandum Findings of Fact and Opinion on July 21, 1986. Stewart v. Commissioner,T.C. Memo. 1986-295. Decisions were then entered for respondent on July 24, 1986. Petitioners appealed this Court's decisions to the Court of Appeals for the Fifth Circuit which rendered its opinion on March 31, 1988. Stewart v. Commissioner,841 F.2d 118 (5th Cir. 1988). On April 22, 1988, that Court issued its mandate vacating our decisions and remanding these causes for further proceedings in accordance with its opinion. The issue whereon the decisions of this Court were vacated concerned the validity of certain leasehold interests in sixteenth section land. [3] which petitioners donated to several charitable organizations (within the meaning of section 170) and for which they took charitable contribution deductions on their Federal income tax returns. [4] We had held that petitioners had failed to prove that the leasehold interests were valid under Mississippi law and thus disallowed petitioners' charitable contribution deductions except to the extent allowed by respondent. In its opinion vacating our decisions and remanding *431 these cases, the Court of Appeals for the Fifth Circuit stated: By requiring the Stewarts to meet a burden of proving that they had a valid lease, the Tax Court focused on the Stewart's [sic] right to claim favorable tax treatment. This question, however, had already been decided by the Mississippi legislature. The legislature chose to treat leases covering sixteenth section lands as prima facie valid. See Miss. Code Ann. § 29-3-52 (Supp. 1987). * * * [841 F.2d at 120.] * * * *432 By basing its holding on the failure of the Stewarts to meet a burden of proof with respect to the validity of the right to favorable tax treatment, the Tax Court focused on the wrong question in the case. Given Mississippi's determination as to the validity of sixteenth section leases, the Tax Court should have moved on to examine the question of the accuracy of valuation of an arguably flawed lease. On the remand which we order, it will be the taxpayers' burden to establish the value of their donations. * * * Our task is thus to determine the fair market value of the prima facie valid leasehold interests donated by petitioners. At trial, the parties stipulated to certain fair market values for these leaseholds based on the assumptions that the leases were valid and that the land underlying the leaseholds had not been designated by the state as forest land. These values are as follows: 30-Acre Tract
$ 197,250
3.8-Acre Tract
24,985
40-Acre Tract
201,000
The $ 201,000 value of the leasehold of the 40-acre tract was stipulated under the assumption that respondent's expert properly employed a "market absorption discount" in calculating his valuation. *433 If we find that use of a market absorption discount is inappropriate, the parties stipulated a value of $ 227,750 for the leasehold of the 40 acres. Thus, in order to determine the fair market value of the donated leaseholds, we must resolve the following questions: (1) Whether the land underlying the leaseholds was classified as forest land, and, if so, the value of the leasehold interests donated. (2) If not, whether respondent's expert properly applied a market absorption factor in valuing the leasehold on the 40 acre tract. Section 29-3-31 MIss. Code Ann. (1972), provides that it is the duty of the State Land Commissioner, "using the services of all appropriate public agencies," to survey and classify all sixteenth section lands reserved for the support of schools, and lying outside a municipality, into two categories: (1) forest lands, and (2) other lands. Section 29-3-33 MIss. Code Ann. (1972), provides that all lands, at least ninety percent of the total area of which is forest or waste lands, or which it is ascertained will produce a maximum of revenue by utilization to produce timber or other forest products, shall *434 be classified as forest lands. Section 29-3-37 Miss. Code Ann. (1972), provides that at any time when any such lands have been classified, a classification report shall be compiled by the Land Commissioner and filed with the superintendent of education of the county in which such land is situated. The county board of supervisors is then required to immediately cause notice to be given of the completion of such classification and all parties in interest have a right to object to the classification as made. If no objections are made in writing and filed with the chancery clerk within the time allowed, "the classification as to such parcel or parcels of land shall be final." If objections are filed, the matter shall be heard by the chancery court and the court shall either confirm or modify the classification as circumstances shall demand. Section 29-3-41 Miss. Code Ann. (1972), provides that lands classified as forest lands shall not thereafter be leased generally, and if such lands so classified are under lease, such lands shall not be re-leased when the lease expires. The mineral rights to forest lands may be leased for oil, *435 gas, or mineral purposes; however, leases of the surface areas of such lants are limited to hunting and fishing rights. Such leases may not extend for a period longer than fifteen years. Respondent argues that the lands subject to the donated leaseholds were classified as forest land pursuant to Mississippi statute. Under Mississippi law, lands so designated may be leased only for hunting, fishing or related activities. Miss. Code Ann. sec. 29-3-41 (1972). Respondent therefore argues that the donated leaseholds should be valued at their highest and best use which is limited to hunting and fishing. [5]
Petitioners argue that the subject lands were never properly classified as forest lands since the Rankin County Board of Supervisors never followed the statutory procedure *436 established to allow objections to a classification to be made. Petitioners therefore argue that the leaseholds should be valued under the assumption that the underlying land's highest and best use would be for commercial or residential development. Based on the evidence in these cases and our interpretation of the above cited Mississippi statute, we hold that the lands at issue had been properly classified as forest lands by the State Land Commissioner. Use of the land by lessees was thus limited to exercise of hunting and fishing rights. Use as a hunting and fishing area thus constitutes the land's highest and best use for purposes of valuing the leaseholds in question. Mississippi law establishes that it is the duty of the State Land Commissioner to classify sixteenth section lands. Pursuant to this obligation, the State Land Commissioner classified the subject lands as forest lands on November 3, 1967. Notice of the classification was then given to the Rankin County Superintendent of Education and transmitted to the Board of Supervisors. At this point in time the classification as forest land was complete and became effective at least prima facie. The fact that the Board *437 of Supervisors may have failed to give notice of the classification and allow objections thereto to be filed as required under section 29-3-37, Miss. Code Ann. (1972), does not vitiate the State Land Commissioner's classification ab initio. To hold otherwise would allow a board of supervisors to nullify the entire legislative plan for administering sixteenth section lands by simply failing or refusing to carry out its statutory duties. Cf. State ex. rel. Patterson v. Buffalo Wood, Inc.,204 So.2d 853, 854 (Miss. 1967). The fact that the lease granted to petitioners in 1972 did not recite that use of the lands was restricted to those uses permissible on forest lands does not require a different result. All sixteenth section land is owned by the state. The boards of supervisors of the various counties are simply the state's agents for administering these properties. Washington County v. Riverside Drainage District,131 So. 644, 645 (Miss. 1931). The only authority these boards have over sixteenth section lands is that bestowed on them by statute. Thus the board of supervisors was without authority to grant petitioners *438 a leasehold on lands classified by the state as forest lands without restricting the lessee's use of the lands as requuired by section 29-3-41, Miss. Code Ann. (1972). Petitioners' argument that treating the lands in question as having been classified as forest lands denies them the procedural due process to which they are entitled under sec. 29-3-37Miss. Code Ann. 91972), is unpersuasive. Any denial of due process suffered by petitioners is as a result of the failure of the Rankin County Board of Supervisors to discharge its statutory obligations. We think that any denial of due process would be remedied by providing petitioners a forum to contest the classification rather than voiding it ab initio. [6]
*439 In our first opinion herein, T.C. Memo. 1986-295, vacated 841 F.2d 118 (5th Cir. 1988), this Court decided the cases based upon its view of the validity of the leases, and therefore did not reach or discuss the issue of the valuation of such leases, which we are now instructed to do. Nevertheless, the valuation issue (including the sub-issue of the classification of the properties as forest or nonforest land) was raised by the parties, was before the Court, and was fully tried, including expert opinions and other evidence from both sides. A record was thus made and briefed which is appropriate for the decision of this valuation issue without the necessity of any further trial, and as though the Court had undertaken to decide the valuation issue in the first instance. Likewise, although the valuation issue was before the Court and was fully tried, neither side contended for or against any ammount of discount which should be applied to the value of such leases, once arrived at, for the arguable weakness or flaws in petitioners' title, as noted by the Court of Appeals, and we accordingly give no weight to this factor here. The only evidence in the record *440 as to the fair market values of the leaseholds on the dates of contribution, if the sixteenth section lands were classified as forest lands, are contained in the reports prepared by respondent's expert, Jerry D. Mask. Mr. Mask first determined that a free interest in the 40-acre tract had a fair market value of $ 120,000 on the date of the leasehold's donation. He then determined the value of petitioner's leasehold interest by subtracting the value of the state's remainder interest (i.e., the present value of the right to the tract at the end of the lease term) from the value of the fee. The amount of petitioners' charitable contribution is the fair market value of petitioners' leasehold interest, reduced by the present value of the future lease payments petitioners were relieved of as a result of the donation. A discount factor of nine percent was used in determining the present values. Mr. Mask thus arrived at a fair market value of the leasehold of the 40-acre tract of $ 94,000 on the date of its donation. An identical methodology was utilized by respondent's expert in determining that the leasehold interest in the 30-acre tract had a value of $ 54,000 on the date of donation. *441 Since petitioners had a 70-percent interest in this leasehold, this valuation would result in a $ 37,800 charitable contribution. No separate valuation report was prepared with respect to the 3.8-acre tract. However, in his trial memorandum and post-trial brief, respondent conceded that the leasehold interest in the 3.8-acre tract had a fair market value, assuming classification as forest lands, of $ 6,231 on the date of its donation. [7]
Since petitioners failed to offer any evidence as to the value of the donated leaseholds, assuming forest land classification of the underlying land, and since we found respondent's expert both qualified and credible, we hold that petitioners have failed to prove charitable contributions in excess of the following amounts, which are based on the leasehold values put forth by respondent, and which we adopt: 30-Acre Tract
$ 37,800
3.8-Acre Tract
6,231
40-Acre Tract
94,000
To reflect the foregoing, [8]
*442 Decisions will be entered under Rule 155.
Footnotes
1. These cases were consolidated pursuant to an Order of this Court dated April 3, 1985. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. * 50 percent of the interest due on $ 51,874.88. ** 50 percent of the interest due on $ 18,535.45. ↩
3. Sixteenth section land is land owned by the State of Mississippi and held in trust for the support of public schools. See Papasan v. United States,756 F.2d 1087, 1089-1092 (5th Cir. 1985), affd. in part, vacated in part 478 U.S. 265↩ (1986). 4. The facts concerning petitioners' acquisition of a leasehold interest in the sixteenth section land, and their subsequent donations of portions thereof in 1978 and 1981, are set forth in our prior opinion herein, T.C. Memo. 1986-295↩, and will not be repeated here. Except as expanded by further findings of fact made herein, such prior findings remain unchanged. 5. The fair market value of property should reflect the highest and best use of the property as of the date of valuation. Symington v. Commissioner, T.C. 892, 896 (1986). In determining a property's highest and best use, uses precluded by existing zoning regulations are normally not considered. United States v. Meadow Brook Club,259 F.2d 41, 45↩ (2d Cir. 1958). 6. In reversing our prior opinion herein, T.C. Memo. 1986-295↩, in which we held that petitioners had failed to establish that the leasehold rights granted to them were valid, the Court of Appeals held that such leases were prima facie valid until set aside in some appropriate proceeding. A comparable situation exists here. The Mississippi State Land Commissioner having discharged his duty to classify the sixteenth section lands here at issue, we hold that such classification was valid, at least until such time as it is successfully attacked by an appropriate proceeding int he proper forum. No such attack appears to have been mounted by petitioners or others anywhere else, and the instant income tax suit in this Court is neither the appropriate proceeding nor the right forum for such an undertaking. 7. The $ 6,231 fair market value of the leasehold interest in the 3.8-acre tract is roughly comparable on a per-acre basis, to the fair market value of the leasehold interest in the 30-acre tract computed by Mr. Mask. ↩
8. Our disposition of the classification issue makes it unnecessary that we address petitioners' contention that respondent's expert improperly used a market absorption discount factor in his valuation of the 40-acre tract, assuming the properties' highest and best use was commercial or residential development. ↩